ELANA T. MCQUADE, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22429–81.     Filed January 31, 1985.

*Fred T. Witt, Jr.*, and *David W. Elrod*, for the petitioner.
*Richard D. Ames* and *Mark L. Puryear*, for the respondent.

OPINION

DAWSON, *Chief Judge*: Petitioner's motion for summary judgment was assigned to Special Trial Judge Francis J. Cantrel for hearing, consideration, and ruling thereon.[1] After a review of the record, we agree with and adopt his opinion, which is set forth below.

[1]This case was assigned pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983).

## OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge*: This case is before the Court on petitioner's motion for summary judgment, filed on June 13, 1984, pursuant to Rule 121(a), Tax Court Rules of Practice and Procedure.[2]

Respondent issued a notice of deficiency to petitioner on May 28, 1981, in which he determined deficiencies in petitioner's Federal income tax and additions to the tax for the taxable calendar years 1976 and 1977 in the following respective amounts:

|        |            | Addition to tax, I.R.C. 1954 |
| Years  | Income tax | Sec. 6653(b)                 |
|--------|------------|------------------------------|
| 1976   | $710,670.31 | $377,610.15                 |
| 1977   | 861,605.22  | 452,117.61                  |

On the same day, respondent issued a joint notice of deficiency for the same years and in the exact same amounts to Estate of Joel H. McQuade, deceased, and Elana T. McQuade, executrix; Elana T. McQuade, surviving wife.

The above amounts were determined based on a sequence of events that began in 1974 when petitioner's husband Joel H. McQuade (hereinafter referred to as Joel or McQuade), Ray Acker (hereinafter referred to as Acker), a vice president at Southwestern Bell Telephone Co. responsible for leasing equipment for the company, and others organized a venture to share in fees, commissions, and profits to be made from certain leveraged lease transactions. In the transaction's most basic form, Acker would pass on to McQuade the leasing needs and requirements of Southwestern Bell, along with the amount of the low bid, so that McQuade could put in the lowest bid on behalf of the company he worked for, ITEL Corp.

For part of the time, McQuade was a partner in a partnership formed to carry on this venture. At some point in 1974 or 1975, McQuade began using his wholly owned corporation, Systems Financing, Inc. (hereinafter referred to as SFI), as part of the venture. The entire enterprise was structured so that on any equipment-leasing transaction on which the bid submitted to Southwestern Bell by McQuade for ITEL met the necessary criteria, McQuade and Acker would share various

---

[2] All Rule references are to the Tax Court Rules of Practice and Procedure.

profits and commissions. This scheme continued through 1977, during which time McQuade and SFI received their shares of profits and income.

Respondent determined in the notices of deficiency that the McQuades failed to report as income certain amounts received as a result of the venture as income, including income from kickbacks, salary from consulting fees, and capital gain from distributions from SFI, and McQuade's distributive share of partnership income arising out of the venture.

At some point prior to the issuance of the deficiency notices, McQuade and SFI filed for bankruptcy, i.e., for an arrangement under chapter 11. The Internal Revenue Service was the sole creditor. Also, on May 23, 1979, McQuade died leaving his wife as executrix of his estate.

On October 28, 1983, the Bankruptcy Court for the Northern District of Texas, Dallas division, entered findings of fact and conclusions of law in the case of *Systems Financing, Inc., and Joel Herndon McQuade v. Internal Revenue Service*, BK Nos. 3–79–0194–F & 3–79–0195–F (Bankr. N.D. Tex 1983). These findings were based on a trial, during which the United States introduced as evidence certain tax computations based on its income analysis for Elana T. McQuade (hereinafter referred to as Elana or petitioner) as well as for Joel. Both notices of deficiency were introduced as evidence, as were the joint Federal income tax returns for the McQuades for the years at issue here.

After setting out in detail the items of income, loss, deductions, and credits for the McQuades, as part of its findings of fact, the Bankruptcy Court found—

74. For the taxable year 1975, *the McQuades* has no federal income tax liability. * * *

100. *The McQuades* had no taxable income in 1976 and, therefore, had no federal income tax liability in 1976. * * *

122. *The McQuades* had no federal income tax liability for 1977.

123. For the taxable years 1975, 1976 and 1977, respectively, the amounts listed for each item of income, gain, loss, deduction or credit of the McQuades and SFI in the schedules prepared by Mr. Dick Holmes and introduced at trial as Plaintiff's Exhibits 13 through 19 are true and correct. * * *

[Emphasis added.]

The court reiterated in its conclusions of law that "4. *The McQuades* have no federal tax liability for the taxable years

1975, 1976 and 1977." (Emphasis added.) Thereupon the court entered an order on October 28, 1983, "that the claims of the Internal Revenue Service filed herein be disallowed." The determination of Joel's income tax liability for 1976 and 1977 was a necessary finding by the Bankruptcy Court. A fortiori, a determination on Elana's notice, identical in every respect with Joel's, must obtain the same result, i.e., that she likewise had no tax liability for 1976 and 1977.

The United States filed a notice of appeal from the judgment of the Bankruptcy Court on November 2, 1983. Subsequently, on January 2, 1984, the United States voluntarily moved to dismiss its appeal on the ground that "it has determined that no appeal should be taken in this matter."[3] The motion was granted, and the appeal was dismissed by order entered on February 1, 1984.

Thus, and both parties agree, the decision of the Bankruptcy Court is final for all purposes.

Petitioner subsequently filed her motion for summary judgment in this Court on the grounds of collateral estoppel, res judicata, and the contention that respondent has not shown that any genuine issue of material fact exists in this case.[4]

Petitioner asks us to determine that respondent is collaterally estopped from determining a deficiency against her for 1976 and 1977 because the Bankruptcy Court has already determined in a final, judicial proceeding that she and her deceased husband had no tax liability for those years. More specifically, we must decide whether petitioner Elana, who was not a named party in the bankruptcy proceeding, should nevertheless be considered bound by the proceeding because she was an interested party and directed the course of action of the suit. In support of her motion, petitioner argues that she was a real party in interest in the bankruptcy proceeding because she was named by respondent individually as surviving wife and as executrix in the notice of deficiency sent to McQuade's estate. She claims that the same issues of law and fact that are involved in the present case were adjudicated in the bankrupt-

---

[3]Respondent has come forward with no other or more specific rationale for voluntarily dismissing the appeal in the bankruptcy case.

[4]Petitioner's prayer for costs and attorneys' fees pursuant to the Equal Access to Justice Act of 1980, Pub. L. 96–481, 94 Stat. 2321, 5 U.S.C. sec. 504 (1982 ed.), in her petition is not a part of this summary judgment motion. Petitioner must file a motion under Rule 231(a)(2) to claim reasonable litigation costs; thus, her prayer for costs and attorneys' fees are not a part of this case.

cy proceeding. Alternatively, petitioner argues that the judgment of the Bankruptcy Court is res judicata as to the present case because there exists sufficient identity of parties and issues.

Finally, petitioner contends she is entitled to summary judgment because no material facts are at issue here. She has set forth the facts as determined in the prior suit; respondent withdrew his appeal stating that no appeal should be taken; and respondent has not come forward with any facts to controvert the findings of the Bankruptcy Court.

Respondent, of course, argues that petitioner was not a party to the prior lawsuit and asks us to hold that, as such, she cannot use nonmutual offensive collateral estoppel to forestall respondent from obtaining his day in court with respect to her tax liabilities for the years in dispute. Respondent further claims, somewhat vaguely, that the thrust of a bankruptcy case, where a judge is trying to protect all creditors, especially small businesses, is different from a tax case. Thus, apparently, his contention is that the Tax Court should not allow petitioner to use the findings of the prior suit to collaterally estop respondent from determining deficiencies here. He also contends that his voluntary dismissal of the McQuade bankruptcy appeal should not be taken to mean that the appeal did not have merit.[5]

The general principle of res judicata provides that once a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit *and their privies* are bound as to each matter that sustained or defeated the claim, and as to any other admissible matter that could have been offered for that purpose. *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948).

Where the second action between the same parties is on a different claim, however, the judgment in the prior action operates as an estoppel as to those matters at issue or points controverted, and upon which the findings or verdict were rendered. *Commissioner v. Sunnen, supra* at 597–598. In other words, once a party has fought out a matter in litigation with

---

[5]Respondent's attempt to raise petitioner's Fifth Amendment right to due process is wholly meritless. Suffice it to say that he has no standing to do so. *Baker v. Carr*, 369 U.S. 186, 204–206 (1962).

the other party, "he cannot later renew that duel." *Commissioner v. Sunnen, supra.*

The Supreme Court further developed the rules for application of collateral estoppel in *Montana v. United States*, 440 U.S. 147 (1979). There, the Court held that the United States, which directed and financed the first litigation in State court, was collaterally estopped in a subsequent suit it, itself, filed in Federal court from disputing rights, issues, and facts previously determined by a court of competent jurisdiction. The Supreme Court held that where the United States, *even though not a (named) party to the prior suit*, has assumed sufficient control over the litigation, and has a sufficient and direct financial or proprietary interest in the outcome of the suit, then the principles of collateral estoppel should apply to the United States. *Montana v. United States, supra* at 153–154.

the persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause. * * * [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own * * * is as much bound * * * as he would be if he had been a party to the record." * * * [*Montana v. United States, supra* at 154, citing *Souffront v. Compagnie des Sucreries*, 217 U.S. 475, 486–487 (1910).]

Whether a litigant has exercised control over the prior litigation is essentially a factual analysis. See *Montana v. United States, supra* at 155. In the present case, Elana, executrix of Joel's estate and clearly a person with a definite interest in the outcome of the bankruptcy proceeding, had a sufficient financial stake in the litigation for her not to be considered a "stranger to the cause." No evidence was introduced by either party here to elucidate the full extent of petitioner's participation in the bankruptcy suit, although her attorneys assert that she did take an active role. Respondent does not dispute this assertion nor does he argue that she was not actively involved. Nevertheless, the facts are clear and undisputed that the notice of deficiency respondent issued to petitioner and other evidence of her tax liability for the years at bar were introduced into evidence in the prior litigation, and the court made a determination of her income tax liabilities. Moreover, the fact remains that the same issues decided in the prior proceeding are those presented here.

In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court distinguished the traditional difference between offensive use of collateral estoppel, where a plaintiff seeks to foreclose a defendant from raising an issue the defendant has previously litigated and lost, and its defensive use, where a defendant seeks to preclude a plaintiff from raising an issue the plaintiff has previously lost. The Court concluded that the offensive use of collateral estoppel should be allowed and that the trial courts should have "broad discretion" to determine when a party to the later suit could assert nonmutual offensive collateral estoppel against the other litigant, a party to a prior suit. *Parklane Hosiery Co. v. Shore, supra* at 331.[6]

The Court in *Parklane Hosiery*, however, concluded that certain circumstances might justify reluctance to allow the offensive use of collateral estoppel by a nonparty to the prior litigation; for example, where the plaintiff could easily have joined in the earlier action or the defendant in the first action might have had little incentive to mount a vigorous defense. But where none of these circumstances, nor other compelling reasons, are present, the purposes of collateral estoppel are met whether or not the party seeking to apply the principle was a litigant in the prior suit.

In a prior opinion involving these issues, *Graham v. Commissioner*, 76 T.C. 853 (1981), the taxpayer's former wife had transferred a secret formula to a corporation they controlled. We find that *Graham* is distinguishable from the instant case in that, here, petitioner in the prior bankruptcy litigation is to be construed a "party" in all but a technical sense. In *Graham*, the taxpayer and his former wife received royalties from the proceeds of sales of products using the formula. After respondent issued notices of deficiency jointly for certain years, and individually to the taxpayer and his former wife for later years, she paid the tax for 1 year and filed suit for refund in the U.S. District Court. That court held that the transaction was a sale of nondepreciable property. The Tax Court, in the taxpayer-husband's later suit, used the broad discretion

---

[6]Collateral estoppel serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *United States v. Mendoza*, 464 U.S. 154, 158 (1984), citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

granted to trial courts by the Supreme Court in *Montana v. United States, supra*, and held that *Graham* was an appropriate case in which to collaterally estop respondent from asserting the same position he had held in the former wife's case. *Graham v. Commissioner, supra* at 858. The issues decided by the District Court were the same as would be decided by the Tax Court; the Government had had a full and fair opportunity to litigate its case before the District Court; and the taxpayer was not forum shopping. Since *Graham* is distinguishable from the present case, we leave for another day the effect, if any, of *United States v. Mendoza*, 464 U.S. 154, 157–158 (1984), on *Graham.*

Respondent strenuously argues that the instant case is controlled by *United States v. Mendoza, supra*, in which the Supreme Court held that under certain circumstances the United States cannot be collaterally estopped on an issue adjudicated against it in an earlier lawsuit brought by a different party. *United States v. Mendoza*, 464 U.S. at 155. For the reasons we now discuss, we find *Mendoza* to be inapplicable to the present situation.

In *Mendoza*, the Court dealt with an issue involving the constitutionality under the Nationality Act of 1940 of a decision to withdraw a naturalization examiner from the Philippines in 1945. The Court found that where the Government is litigating issues involving legal questions of substantial public importance, allowing nonmutual collateral estoppel against it could thwart the development of important questions of law by freezing the first final decision on a particular legal issue. *United States v. Mendoza, supra.* The Supreme Court held in *Mendoza* that the Government was not bound by a decision in a prior case that involved different litigants.[7] See and compare *United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1984), in which the Supreme Court allowed the Stauffer company to assert collateral estoppel successfully against the United States in a later suit involving the issue of whether private contractors were authorized representatives under

---

[7]See and compare *Sun Towers, Inc. v. Heckler*, 725 F.2d 315 (5th Cir. 1984), in which the court held that *United States v. Mendoza, supra*, foreclosed the use of nonmutual collateral estoppel against the Secretary, Department of Health and Human Services, who had denied payment of certain costs claimed to be due under the Medicare Act. The court noted that the scope of the *Mendoza* decision was ambiguous, but found that *Mendoza* applied "to all issues." *Sun Towers, Inc. v. Heckler, supra* at 323 n. 8.

provisions of the Clean Air Act, Pub. L. 95–95, 91 Stat. 686, 42 U.S.C. sec. 7414(a)(2) (1976 and Supp. V 1981). The United States had already litigated the issue against one of the company's other plants in another location and lost. The Court called this principle "mutual defensive collateral estoppel," where "Like *Montana* the case at bar involves the defensive use of collateral estoppel against the government by a party to a prior action." *United States v. Stauffer Chemical Co.*, 464 U.S. at 170.

In *Mendoza*, the Court distinguished the different situation in *Montana v. United States, supra*, where the Government was bound by the prior decision because it had financed and controlled the first litigation; thus for all practical purposes, the United States had been a party in the first case. *United States v. Mendoza*, 464 U.S. at 159.

Here we have a situation similar to that in *Montana* where the unnamed party in the former suit was nevertheless an interested party, took part in the action, and was financially affected by the outcome. Thus, petitioner constituted a "party" in all but a technical sense. As a result, mutuality of parties exists sufficient to activate the principle of estoppel, so that petitioner is not attempting to use "nonmutual offensive collateral estoppel" against respondent.

The Bankruptcy Code, Pub. L. 95–598, 92 Stat. 2582, 11 U.S.C. sec. 505(a)(1) (1982 ed.), authorizes a bankruptcy court to "determine the amount or legality of any tax." This Court, in *Comas, Inc. v. Commissioner*, 23 T.C. 8, 12 (1954), has concluded that "Congress intended that once a bankruptcy court allowed a deficiency for which claim was filed and that court's action became final, the amount and validity of the deficiency was not thereafter to be the subject of a consideration by the Tax Court."[8]

The bankruptcy proceeding with which we are concerned determined the tax liability of the McQuades and of Joel's wholly owned corporation, SFI, for the same years now before this Court. Although the court did not have petitioner before it as a named party, the deficiencies determined against

---

[8]See also *Huckabee Auto Co. v. United States*, an unreported case (Bankr. M.D. Ga. 1984, 84–2 USTC par. 9841), where the Bankruptcy Court for the Middle District, Georgia, held that once a ch. 11 plan is confirmed by the court, the plan is binding on the United States and it may not attempt to collect the tax in another manner.

McQuade's estate named her as the executrix and surviving wife. The court also had before it the deficiency notice naming petitioner individually and other documents relating to petitioner's tax liability. Furthermore, the deficiencies determined against her here involve exactly the same issues that were decided in the bankruptcy proceeding, i.e., the income tax deficiencies and fraud additions to the tax arising from Joel's activities in the venture with Ray Acker and others in the lease transactions.

Because we decide that respondent is collaterally estopped from asserting the issues already decided by the Bankruptcy Court, a court of competent jurisdiction, we grant petitioner's motion for summary judgment. It cannot be legitimately disputed that she has no Federal income tax liability for the years 1976 and 1977, so there are no genuine issues as to any material facts remaining in this case.[9] Therefore,

*An appropriate order and decision will be entered.*

---

[9]There can be no valid contention that respondent's fraud allegations are still at issue. Suffice it to say that if there is no tax liability, and therefore no underpayment, there cannot be an addition to tax for fraud. See sec. 6653(b)(1).