CAROLYN S. KROH, PETITIONER *v.*
COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 36295-87, 7250-88.     Filed April 2, 1992.

384

*Keith A. Greiner,* for petitioner.
*Alan M. Jacobson,* for respondent.

OPINION

HAMBLEN, *Judge:* This matter is before the Court on petitioner's motion to amend her petitions pursuant to Rule 41[1] and petitioner's motion for partial summary judgment pursuant to Rule 121. Petitioner's motions, and respondent's objections to them, raise the following issues: (1) Whether petitioner should be permitted to amend her petitions to include new defenses and supportive facts pertaining to her motion for partial summary judgment, her husband's bank-

---

[1] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the years in issue.

ruptcy case, and her assertion that she qualifies for "innocent spouse" relief under section 6013(e) for a portion of her alleged tax deficiencies; (2) whether respondent is barred as a matter of law from proceeding against petitioner for the full amount of petitioner's alleged tax deficiencies and additions to tax because petitioner's husband, with whom she had filed joint returns, was adjudicated a bankrupt and settled and paid his assessed tax liabilities for the years in issue in the bankruptcy proceeding; (3) whether the principles of res judicata or collateral estoppel bar respondent from litigating tax deficiencies against petitioner in amounts greater than those awarded to respondent in the bankruptcy case of petitioner's husband; and (4) if respondent is limited in litigating petitioner's tax deficiencies by the principles of collateral estoppel or res judicata, whether petitioner may nonetheless litigate the additions to tax determined by respondent. We assume the following facts as submitted by the parties in their pleadings, memoranda, and supporting documents.

Petitioner Carolyn S. Kroh and her husband, George P. Kroh, filed joint income tax returns for 1979, 1980, and 1982. On August 12, 1987, a joint statutory notice of deficiency was issued to petitioner and Mr. Kroh for their 1979 and 1980 tax years. On January 13, 1988, a second notice of deficiency was issued solely to petitioner for 1982. In the notices, respondent determined deficiencies in, and additions to, petitioner's income tax as follows:

*Docket No. 36295-87*

| Year | Deficiency | Addition to tax sec. 6653(a) |
|---|---|---|
| 1979 | $216,001.16 | $10,800.06 |
| 1980 | 64,585.00 | 3,229.25 |

*Docket No. 7250-88*

| Year | Deficiency | Addition to tax sec. 6661 |
|---|---|---|
| 1982 | $432,820 | $108,205 |

On November 10, 1987, petitioner filed a petition seeking a redetermination of her tax deficiencies and additions to tax for 1979 and 1980. On April 12, 1988, petitioner filed a second petition seeking a redetermination of her tax deficiency and addition to tax for 1982. She was residing in Mission Hills, Kansas, at the time the petitions were filed.

Petitioner's husband, Mr. Kroh, was adjudicated bankrupt pursuant to a petition he voluntarily filed on January 29, 1987, under the Bankruptcy Code, 11 U.S.C., in the U.S. Bankruptcy Court for the Western District of Missouri. The bankruptcy court denied Mr. Kroh's application for a discharge from personal liability for his debts. David Achtenberg was appointed the trustee in Mr. Kroh's bankruptcy case.

On June 4, 1987, respondent filed a proof of claim in Mr. Kroh's bankruptcy case claiming a total of $860,542.91 in liabilities from Mr. Kroh for the taxable years 1977, 1979, 1980, and 1982. Respondent increased the claim to $1,399,543.96 by an amended proof of claim dated October 28, 1988.

On November 28, 1989, respondent's counsel and the bankruptcy trustee executed an agreement entitled "Compromise, Settlement Agreement and Stipulation" in which the alleged tax liabilities of Mr. Kroh set forth in respondent's proofs of claim were compromised. The caption of the agreement names "George P. Kroh" as the "debtor" and further provides as follows:

It is hereby stipulated that the following statement shows the debtor's federal income tax liabilities for 1977, 1979, 1980 and 1982:

| Year | Income tax | Interest to 1/29/87 | Penalty |
|------|-----------|---------------------|---------|
| 1977 | $1,870.00 | $2,695.78 | - - - |
| 1979 | 5,385.34 | 4,987.59 | $269.27 |
| 1980 | 64,585.00 | 67,119.33 | - - - |
| 1982 | 156,570.00 | 94,216.54 | 39,142.50 |
| TOTAL | 228,410.34 | 169,019.24 | 39,411.77 |

It is further stipulated that under 11 U.S.C. §1129(a)(9)(C) interest at 11 percent per annum is due, on the above income tax and interest, from January 11, 1989 to November 30, 1989 in the amount of $39,904.46, plus interest of $119.77 per day after November 30, 1989, until said income tax and interest to January 29, 1987 is paid. In the event that the income tax and interest to January 24, 1987 is paid before November 30, 1989, interest in the amount of $119.77 per day will be deducted for each day prior to November 30, 1989 that the income tax and interest to January 29, 1987 is paid.

It is further stipulated that the Trustee consents to the assessment of the income tax, interest and penalties.

It is further stipulated that the income tax, interest to petition date and interest under 11 U.S.C. §1129(a)(9)(C) will be paid on November 30, 1989 to the Internal Revenue Service, or such other date as ordered by the Court.

It is further stipulated that the penalties in the amount of $39,411.77 will be allowed and paid as an unsecured claim not entitled to priority.

The bankruptcy court, in an order filed on November 28, 1989, approved the settlement agreement, confirming the priority status of the taxes and interest portion of respondent's claims, and allowing the additions portion as an unsecured claim. Subsequently, respondent assessed Mr. Kroh's tax liabilities as approved by the bankruptcy court. On November 30, 1989, the bankruptcy trustee paid the taxes and the interest on Mr. Kroh's liabilities as set forth in the settlement agreement. Neither the bankruptcy trustee nor Mr. Kroh has paid any portion of the additions to tax named in the settlement agreement.

Petitioner was not a party in her husband's bankruptcy case and did not participate in the proceedings in any way.

Petitioner filed a motion for partial summary judgment pursuant to Rule 121 on the grounds that respondent's settlement, assessment, and collection of her bankrupt husband's tax liabilities now bars respondent in these cases from proceeding against her for all, or at least a portion of, the tax deficiencies and additions to tax as determined in the deficiency notices. Petitioner also filed a motion to supplement and amend the petitions pursuant to Rule 41. Respondent filed objections to each of petitioner's motions, and a hearing was held on petitioner's motions in Kansas City, Missouri, during which petitioner submitted her proposed amendments to the petitions. At the hearing the parties were ordered to file supplemental briefs in support of their positions on the partial summary judgment motion, which they have done.

*Petitioner's Motion to Supplement and Amend the Petitions*

We must first decide whether to grant petitioner's motion to supplement and amend her original petitions. In her motion, petitioner requests the Court's permission to amend her petitions by asserting: (1) Two alternative defenses which are the subject of her motion for partial summary judgment; (2) that petitioner had reasonable cause and acted in good faith as to any understatements of income on her tax returns, that there was substantial authority for the tax treatment of those items on the returns for which respondent determined deficiencies, and that respondent erred in applying section 6661 providing for an addition to tax for the substantial understate-

ment of income tax for 1982; (3) facts including petitioner's tax identification number and facts pertaining to the bankruptcy case of petitioner's husband, George Kroh; (4) that petitioner acted reasonably and in good faith in reporting her income on her tax returns since she had only nominal income in her own right; was not engaged in any of her husband's businesses, worked only as a housewife, mother, and volunteer worker for civic organizations during the years in issue; and believed that her husband totally relied on competent tax advisers and accountants in preparing their joint tax returns; and (5) facts supporting petitioner's status as an innocent spouse under section 6013(e), in particular that petitioner received no benefit from the omitted income in the 1982 transaction involving a complicated exchange of stock and debt for real estate because respondent's reallocation of the transaction under section 482 resulted in a constructive dividend for petitioner's husband rather than the receipt of actual income or property.

Petitioner argues that respondent would not be prejudiced by the amendments to her petitions since respondent's attorney, who is the same Government attorney who handled the tax liability settlement in the bankruptcy case of petitioner's husband, has been aware of petitioner's additional defenses and facts for some time. Petitioner further argues that her additional defenses are well supported by relevant facts.

Respondent does not object to paragraph (1) of petitioner's motion pertaining to the defenses which are the subject of petitioner's motion for partial summary judgment or to paragraph (3) pertaining to the bankruptcy case of petitioner's husband. However, respondent does object to paragraphs (2), (4), and (5) because, according to respondent, they contain conclusions and allegations of facts which are the subject of respondent's request for documents and interrogatories that petitioner has refused to provide. Respondent argues that, because petitioner's failure to comply with the discovery process has hindered the stipulation process and prevented respondent from properly preparing for trial, petitioner should not be permitted to amend her petitions with those new matters.

Rule 41(a) provides that, once respondent serves an answer to a petition, a petition may only be amended:

by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires. No amendment shall be allowed after expiration of the time for filing the petition, however, which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file. * * *

Rule 34(b)(5) provides that a petition shall contain "Clear and concise lettered statements of the facts on which petitioner bases the assignments of error".

We note that some of petitioner's proposed "factual" amendments to her petitions border on being legal conclusions or allegations, rather than factual assertions. Nonetheless, because petitioner's cases are not presently calendared for trial and respondent has sufficient time to file responsive pleadings, we grant petitioner's motion to supplement and amend the petitions in their entireties. We admonish petitioner that, as she has invoked the jurisdiction of this Court, she must now comply with this Court's Rules pertaining to discovery and with any subsequent standing pretrial order issued in these cases. However, her failure to answer respondent's request for interrogatories and documents to date does not require the denial of her motion to supplement and amend her petitions.

We find that none of the defenses or factual assertions contained in paragraphs (2), (4), and (5) above would cause undue prejudice to respondent. The assertions petitioner proposes to add to her petitions are ones that respondent could reasonably expect petitioner to argue at trial. Accordingly, petitioner's motion to supplement and amend her petitions will be granted.

## Petitioner's Motion for Partial Summary Judgment

We must next decide whether to grant petitioner's motion for partial summary judgment. A decision will be rendered on a motion for partial summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b).[2]

---

[2]Summary judgment under Rule 121 is derived from rule 56 of the Federal Rules of Civil Procedure. Hence, in any question turning on the interpretation of Rule 121, the history of rule 56 of the Federal Rules of Civil Procedure and the authorities interpreting such rule are considered

A fact is material if it "tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, 10A Federal Practice and Procedure: Civil, sec. 2725, at 93 (2d ed. 1983).

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual questions. *Cox v. American Fidelity & Casualty Co.,* 249 F.2d 616, 618 (9th Cir. 1957); *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974). Since the effect of granting a motion for summary judgment is to decide an issue against a party without allowing him an opportunity for trial, such action is a "drastic remedy" to be used cautiously and sparingly after a consideration of the case reveals that the requirements for summary judgment have clearly been met. *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 621-622 (1973); *Adickes v. Kress & Co.,* 398 U.S. 144, 158-159 (1970). The party opposing the motion is to be afforded the benefit of all reasonable doubt, and the underlying facts contained in the record must be viewed in a light most favorable to the opposing party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

In her motion, petitioner asserts that respondent's settlement of Mr. Kroh's tax liabilities in Mr. Kroh's bankruptcy case, and respondent's subsequent assessment and collection of those compromised amounts, now bars respondent as a matter of law from litigating petitioner's tax deficiencies and additions to tax as set forth in the deficiency notices issued to her. Petitioner argues, in the alternative, that the principles of res judicata and collateral estoppel bar respondent from litigating taxes, interest, and additions to tax in excess of the amounts that the bankruptcy court awarded to respondent in her husband's bankruptcy case. Finally, petitioner contends that, if respondent is collaterally estopped from litigating petitioner's tax deficiencies, she should nonetheless be permit-

---

by the Tax Court. See *Hoeme v. Commissioner,* 63 T.C. 18, 21 (1974); *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974).

ted to litigate the additions to tax set forth in the deficiency notices.

Respondent argues that the tax liability of petitioner and her husband is joint and several, and although Mr. Kroh's bankrupt estate has paid a portion of petitioner's alleged tax liabilities, neither that fact, nor Mr. Kroh's court-approved tax settlement agreement, precludes respondent from proceeding against petitioner separately or from arguing the correctness of respondent's determinations of petitioner's total tax deficiencies and additions to tax. Respondent further argues that the doctrines of res judicata and collateral estoppel do not apply since petitioner was neither a party in her husband's bankruptcy proceeding nor his privy with respect to it. For the reasons set forth below, we will deny petitioner's motion for partial summary judgment.

Section 6013(d)(3) provides that the tax liability of a husband and wife who file a joint income tax return shall be joint and several. Because the statute nowhere spells out the consequences of joint and several liability, it has been held that Congress intended the common law rules to apply. *United States v. Wainer,* 211 F.2d 669, 673 (7th Cir. 1954); *Dolan v. Commissioner,* 44 T.C. 420, 426 (1965); see *Hanover Bank v. Commissioner,* 369 U.S. 672, 687 (1962). The central principle of joint and several liability, characteristic of joint return responsibility, is that the obligee, respondent herein, may, at her option, proceed against the obligors separately and obtain separate judgments against each. *Sessions v. Johnson,* 95 U.S. 347 (1877); *Tavery v. United States,* 897 F.2d 1032, 1033 (10th Cir. 1990); *Dolan v. Commissioner, supra* at 427, 436; 2 Restatement, Judgments 2d, sec. 49 & comment a (1982); 2 Williston, Contracts, sec. 328 (3d ed. 1959).

In the seminal case, *Dolan v. Commissioner, supra,* we interpreted section 6013(d)(3), section 6211(a), and the meaning of joint and several liability as they apply to joint return filers. In that case we held that, in the case of a joint return, the determination as to whether there is a tax deficiency must be made separately for each spouse and prior assessments against one spouse do not bar the Commissioner from proceeding against the other spouse with respect to the same deficiencies, nor are the prior assessments to be considered in making the computation of the other spouse's tax deficiencies.

*Dolan v. Commissioner, supra* at 426, 429, 431. We find that petitioner's situation is factually analogous to *Dolan v. Commissioner, supra,* and that our holdings in that case control, if not reject outright, most of the legal arguments and issues raised in petitioner's motion for partial summary judgment.

In *Dolan,* the husband and wife filed joint income tax returns for 1957 and 1958. In June 1962, Mr. Dolan executed a Form 870, wherein he waived the restrictions on assessments and collection of deficiencies in income taxes and additions to tax for the years 1957 and 1958. On August 31, 1962, the deficiencies and additions to tax were assessed against Mr. Dolan. Subsequently, the Commissioner issued a notice of deficiency to Mrs. Dolan for 1957 and 1958 income taxes and additions to tax in amounts identical to those previously assessed against Mr. Dolan. The assessments made against Mr. Dolan were still outstanding at the time the deficiency notice was mailed to Mrs. Dolan. Mrs. Dolan filed a petition in the Tax Court arguing, among other things, that her alleged tax deficiencies could not exist after the Commissioner had assessed the same deficiencies against her husband. In our opinion, we stated that "we may consider an assessment entered by respondent as equivalent to a judgment, since both permit an obligee to enforce the collection of the obligation by seizure and sale of the obligor's property." *Dolan v. Commissioner, supra* at 427; see *Bull v. United States,* 295 U.S. 247, 259-260 (1935) ("The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.").[3] We further stated that section 6013(d)(3) and section 1.6013-4(b), Income Tax Regs., provide very strong support for the proposition that a husband and wife remain separate taxpayers even though they file a joint return. Our preliminary holding was that Mr. Dolan, as a separate and distinct taxpayer, had an absolute right to separately waive the restrictions on assessment and collection contained in section 6213(a). We stated that the Commissioner could not have made a valid assessment simultaneously against Mrs. Dolan since she had not signed any waiver, but that her choice

---

[3]See also Garbis, IRS Practice and Procedure, secs. 10.01, 10.02, 14.01[2] (2d ed. 1991).

not to waive the restrictions on assessment did not affect the validity of the tax assessment made against Mr. Dolan.

We then addressed the "primary issue" in the *Dolan* case, that is, whether the Commissioner's assessment of deficiencies against Mr. Dolan barred the Commissioner from proceeding in the Tax Court against Mrs. Dolan with respect to the same deficiencies. Employing the following analysis, we held that the Commissioner was not so barred:

Essentially, the issue turns on whether deficiencies, as defined by section 6211(a), could exist as to petitioner after respondent had assessed the same deficiencies against John [Mr. Dolan].

Under section 6211(a)(1)(B), the amount of what would otherwise be a deficiency must be reduced by "the amounts previously assessed (or collected without assessment) as a deficiency." It is arguable that in computing the amount of a deficiency in the tax of one of two spouses who made a joint return, such deficiency should be reduced by amounts assessed as a deficiency against the other spouse. Nevertheless, we are of the opinion that *it is far more logical and more consistent with the statutory scheme to give credit under section 6211(a)(1)(B) only for amounts previously assessed against the taxpayer with respect to whom the computation of a deficiency is being made.*

In the first place, *it seems apparent from the language of section 6203 and the regulations thereunder that an assessment is intended to have significance only with respect to the taxpayer whose liability is assessed.* John [Mr. Dolan] and petitioner [Mrs. Dolan] are separate taxpayers. *We see no reason to construe section 6211(a) as reducing the deficiencies in the tax of one taxpayer by assessments made against a different taxpayer, especially where there is no evidence that such a construction was intended by Congress.*

*Our conclusion is not altered by the fact that, under the parenthetical phrase in section 6211(a)(1)(B), the deficiencies in petitioner's tax would have been reduced by any amounts collected from John prior to the mailing of the statutory notice to petitioner.* The reason for this provision is that, even though John and petitioner are jointly and severally liable for any deficiencies with respect to their joint returns, there is only one obligation for each year. Respondent is entitled to only one satisfaction of that obligation. Since payment by either spouse effects a *pro tanto* extinguishment of the obligation, the parenthetical phrase in section 6211(a)(1)(B) is wholly consistent with the joint and several liability of the spouses. *To hold, however, that an assessment against John also had the effect of reducing the deficiency as to petitioner would be inconsistent with the principles of joint and several liability. This is because, as we have already pointed out, an assessment is comparable to a judgment; and an unsatisfied judgment against one obligor does not discharge a coobligor who is jointly and severally liable.* 2 Williston, Contracts, sec. 328; Restatement, Contracts, sec. 119(3).

A further indication that the statute contemplates an assessment which is effective against one party to a joint return but does not hamper enforcement of the liability of the other spouse, is found in section 6871(a).

*Section 6871(a) requires the immediate assessment of any unassessed deficiency in income, estate, or gift taxes of taxpayers in respect of whom certain bankruptcy or receivership proceedings have been instituted. The assessment is to be made despite the restrictions imposed by section 6213(a); there is no express provision allowing similar assessment against the spouse of such a taxpayer. It hardly seems likely that Congress would have required, in section 6871(a), immediate assessment against a bankrupt taxpayer, if Congress had believed that such an assessment would, under section 6211(a), have prevented respondent from proceeding against the spouse of the bankrupt.*

*Accordingly, we hold that, in the case of a joint return, the determination as to whether there is a deficiency within the meaning of section 6211(a) must be made separately for each spouse, and prior assessments against one spouse are not to be considered in making the computation with respect to the other spouse.* * * *

[*Dolan v. Commissioner,* 44 T.C. at 429-431; fn. refs. omitted; emphasis added.]

As in *Dolan,* respondent could not have made a valid assessment of petitioner's tax liability at the time respondent assessed the tax liability of Mr. Kroh. It is undisputed that the bankruptcy court had jurisdiction under the Bankruptcy Code, 11 U.S.C. sec. 505(a)(1) and (2) (1978), to determine the tax liability of the debtor, Mr. Kroh.[4] It is well established, however, that a bankruptcy court has no jurisdiction to decide controversies between third parties that do not involve the debtor or his property. *Johnson v. First Nat. Bank,* 719 F.2d 270, 273 (8th Cir. 1983) ("a bankruptcy court possesses only the jurisdiction and powers expressly or by necessary implication conferred by Congress");[5] *Richmond v. United States,* 456 F.2d 458, 463 (3d Cir. 1972); *Evarts v. Eloy Gin Corp.,* 204 F.2d 712 (9th Cir. 1953); *Nixon v. Michaels,* 38 F.2d 420 (8th Cir. 1930).[6]

We observe that several Courts of Appeals recognize an exception to the general rule, that bankruptcy courts have no jurisdiction to determine third-party disputes, where administration of the bankruptcy proceeding would be impossible

---

[4]See 11 U.S.C. sec. 505(a)(1) (1978), which authorizes a bankruptcy court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax". See also 11 U.S.C. sec. 505(a)(2) (1978).

[5]We note that Mr. Kroh filed his petition under the Bankruptcy Code in the State of Missouri, and thus venue for an appeal in his case would likely lie in the Eighth Circuit.

[6]1 Collier, Bankruptcy, par. 8.03[1][a] and [b], at 8-10 to 8-22 (15th ed. 1992); see also 8 Collier, Bankruptcy, par. 3.02 n.2 (14th ed. 1963).

without determining the third party's controversy. *O'Dell v. United States,* 326 F.2d 451 (10th Cir. 1964); *In re International Power Securities Corp.,* 170 F.2d 399 (3d Cir. 1948); *In re Burton Coal Co.,* 126 F.2d 447 (7th Cir. 1942). However, these cases are inapplicable here, where petitioner has made no showing that her husband's title 11 proceedings could not be administered without having the bankruptcy court determine her tax liability.

In *Richmond v. United States, supra,* the nonbankrupt wife had filed joint income tax returns with her husband, the debtor. During her husband's bankruptcy proceeding, the wife consented to the bankruptcy referee's determination of ownership of assets over which she had more than colorable claim, which the Government's jeopardy assessment had frozen, and which were not in possession of the bankruptcy court. The U.S. Court of Appeals for the Third Circuit held that, where there was no showing that title 11 proceedings could not be administered without having the referee determine the debtor's wife's tax liability, the bankruptcy referee did not have jurisdiction to determine the income tax liability of the debtor's wife, who was not herself a bankrupt and who had filed joint returns with the debtor. The court stated that the wife's "tax liability may be seen as separate and distinct from the tax liability of her husband, even though both liabilities result from filing the same joint return." *Richmond v. United States, supra* at 463. The court held that the bankrupt estate could be administered notwithstanding the fact that the wife contended that the jeopardy assessment prevented effectuation of terms of compromise, upon which termination of her husband's title 11 proceeding depended. *Richmond v. United States, supra* at 463-464.

We are not persuaded that the facts in petitioner's case present any stronger basis for the bankruptcy court's jurisdiction to determine her tax liability than that of the debtor's wife in *Richmond v. United States, supra.* To the contrary, we find that petitioner's case is weaker. There was virtually no showing as to petitioner's ownership of property, and her attorney admitted at the hearing of this motion that she did not participate in the bankruptcy proceeding in any way. Thus, petitioner's tax liability is a controversy between herself and the Government and, under the general rule stated above,

the bankruptcy court had no jurisdiction to decide that controversy merely because she signed joint returns with her husband. Petitioner has also failed to persuade us that respondent negotiated petitioner's tax liability, in addition to Mr. Kroh's, when respondent signed the settlement agreement. This contention is contrary to the facts. First, there is no evidence that respondent "negotiated" petitioner's tax liability along with Mr. Kroh's since there was no actual adjudication on the merits of Mr. Kroh's tax liability. Secondly, the settlement agreement executed by the trustee in bankruptcy and respondent does not, on its face, purport to bind petitioner to its terms. Certainly, if the parties who executed the settlement document wanted the terms of the document to establish or evince petitioner's tax liability, in addition to the debtor's, they would have thought it prudent to say so in the document, or at least to refer to petitioner personally. Here, the settlement document refers only to the tax liability of the "debtor", Mr. Kroh. Neither petitioner's name, nor the fact that she is the debtor's wife, appears on the settlement document. A person becomes a "debtor" under the Bankruptcy Code only by filing a petition in bankruptcy. 11 U.S.C. secs. 101(13), 301, 302(a); see also S. Rept. 95-989 (1978), Notes of Committee on the Judiciary. Once the petition is filed, the debtor is entitled to certain protections under the Bankruptcy Code. *Goldsby v. United States,* 135 Bankr. 611 (Bankr. E.D. Ark. 1992); *In re Hall,* 123 Bankr. 441, 444 (Bankr. N.D. Ga. 1990).

In the instant case, only Mr. Kroh chose to file a bankruptcy petition. Petitioner chose not to file a petition and, therefore, was not a "debtor" in her husband's title 11 bankruptcy case. 11 U.S.C. secs. 101(13), 301, 302(a); see also S. Rept. 95-989 (1978), Notes of Committee on the Judiciary. Since we have already established that petitioner's tax liability was not within the purview of the bankruptcy court's jurisdiction by virtue of her having filed joint tax returns with her husband, *Richmond v. United States, supra,* respondent cannot be deemed to have negotiated petitioner's tax liability when respondent executed the settlement document which was subsequently approved by the bankruptcy court. Therefore, we find that respondent had no choice but to proceed against petitioner and her husband, Mr. Kroh, separately and to obtain

separate judgments against each of them. Accordingly, absent the efficacy of res judicata or estoppel, the settlement agreement executed by the bankruptcy trustee and respondent, and subsequently approved by the bankruptcy court, is not binding on petitioner, and respondent is not barred from proceeding against petitioner for the full amounts of the deficiencies and additions to tax as determined in petitioner's deficiency notices. *Dolan v. Commissioner,* 44 T.C. 420, 430 (1965).

Petitioner next argues that, because respondent is entitled to have the obligation satisfied only once, petitioner's tax deficiencies as determined by respondent must be deemed extinguished, or at least diminished, by the bankruptcy trustee's payments to respondent pursuant to Mr. Kroh's bankruptcy settlement agreement. As we stated in *Dolan v. Commissioner, supra* at 430, full payment of a joint and several obligation by one obligor extinguishes the liability of all the joint obligors. See 2 Restatement, Judgments 2d, sec. 50(2) & comment c (1982). In these cases, the bankruptcy trustee's payments to respondent were made after respondent issued petitioner's deficiency notices. Even if the payments had been made earlier, they would not "extinguish" petitioner's liabilities since they amount to only a portion of them. Thus, we may adjudicate the correctness of respondent's proposed determinations of petitioner's tax deficiencies and additions to tax, in their entirety, as those amounts appear in the deficiency notices. Because respondent is entitled to have the joint obligation of petitioner and Mr. Kroh satisfied only once, petitioner is potentially liable for paying only those amounts in excess of the taxes paid by the trustee in the bankruptcy case of her husband.

The third issue that petitioner asks us to determine is whether respondent is barred by the principles of res judicata and collateral estoppel from litigating petitioner's tax deficiencies that exceed the amounts awarded to respondent in the bankruptcy case of her husband. Respondent argues that, since petitioner was not a party to her husband's bankruptcy suit or his privy with respect to it, the doctrines of res judicata and collateral estoppel do not restrict respondent in litigating and subsequently assessing the full amounts of petitioner's tax deficiencies and additions to tax as those amounts appear in her deficiency notices.

The general principle of "res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948). The rule provides that, once a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound as to each matter that sustained or defeated the claim and as to any other admissible matter that could have been offered for that purpose. *Commissioner v. Sunnen, supra* at 597 (citing *Cromwell v. County of Sac,* 94 U.S. 351, 352 (1876)). The judgment puts an end to the cause of action, which cannot again be litigated between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. *Commissioner v. Sunnen, supra* at 597.

But where the second action between the same parties is upon a different cause or demand, the estoppel principle applies much more narrowly. Thus, under the doctrine of collateral estoppel, a judgment in a prior suit precludes, in a second cause of action, litigation of issues actually litigated and necessary to the outcome of the first action. Collateral estoppel serves the dual purpose of protecting litigants from the burden of relitigating identical issues and of promoting judicial economy by preventing unnecessary or redundant litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979). For the following reasons, we hold that neither the doctrines of res judicata nor collateral estoppel applies so as to bar respondent from proceeding against petitioner in these cases.

In order for the doctrine of res judicata to apply, petitioner must prove that each of the requirements has been met. Rule 142(a). Specifically, petitioner must show that: (1) The cause of action in the prior bankruptcy case of petitioner's husband is the same cause of action as in the instant proceeding, (2) petitioner qualifies as a party or a privy of her husband with respect to his bankruptcy case, and (3) the approval by the bankruptcy court of Mr. Kroh's settlement agreement with respondent constitutes a final judgment on the merits of the

single cause of action.[7] *Montana v. United States,* 440 U.S. 147, 153 (1979); *Commissioner v. Sunnen, supra* at 597.

Based on the facts before us, the decision of the U.S. Court of Appeals for the Tenth Circuit, and our own Court precedent in *Dolan v. Commissioner,* 44 T.C. 420 (1965), we find that respondent's cause of action against Mr. Kroh in the prior bankruptcy proceeding is different from the cause of action being considered in this proceeding. As discussed above, section 6013(d)(3) imposes joint and *several* liability upon a husband and wife who file a joint return. When interpreting this provision in light of the statutory scheme, we observed in *Dolan* that "joint and several liability necessarily implies the existence of at least two entities" and that both the tax statute and the case law support *"treating as separate* 'taxpayers' a husband and wife who have filed a joint return." *Dolan v. Commissioner, supra* at 428 (emphasis added). We held in *Dolan* that, "in the case of a joint return, the determination as to whether there is a deficiency within the meaning of section 6211(a) must be made separately for each spouse, and *prior assessments* against one spouse are not to be considered in making the computation with respect to the other spouse." *Dolan v. Commissioner, supra* at 431 (emphasis added). Clearly, our holding necessitates, in its application, separate causes of action for each spouse on a joint return since the prior assessments (which we equated with final "judgments" of tax liabilities in *Dolan*) of one spouse are to be deemed irrelevant to the determination and computation of the other spouse's tax deficiencies and assessments. A determination that respondent's claim in the bankruptcy court and respondent's claim in the instant proceeding constitute a single cause of action would, in effect, contravene Congress' statutory scheme as we interpreted it in our analysis in *Dolan* of section 6013(d)(3), providing for the joint and several liability of a husband and wife who file a joint return; of section 6211(a), which defines the term "deficiency"; as well as related sections and regulations. *Dolan v. Commissioner, supra* at 428-432.

---

[7]We note that the requirement of a final judgment on the merits does not mean that the judgment must also have been an *adjudication* on the merits. The doctrine of res judicata, unlike the doctrine of collateral estoppel, may still apply even though the prior court proceeding never reached the basis of the agreements on which its final judgment rests. *United States v. International Building Co.,* 345 U.S. 502, 505-506 (1953).

The meaning of the term "deficiency" under section 6211(a) is nonsensical unless a husband and wife who file joint returns are deemed to have separate causes of action in successive litigation over their separate tax liabilities. *Dolan v. Commissioner, supra* at 429-430. Moreover, as we stated in *Dolan:* "It hardly seems likely that Congress would have required, in section 6871(a), immediate assessment against a bankrupt taxpayer, if Congress had believed that such an assessment would, under section 6211(a), have prevented respondent from proceeding against the spouse of the bankrupt." *Dolan v. Commissioner, supra* at 431.

A decision on a factually similar case in the Tenth Circuit Court of Appeals supports our view. In *Tavery v. United States*, 897 F.2d 1032, 1033 (10th Cir. 1990), the Tenth Circuit stated that "claims against joint obligors are generally regarded as separate and distinct for res judicata purposes.* * * The same is true with respect to the joint and several obligation of spouses filing a joint income tax return." See generally 2 Restatement, Judgments 2d, sec. 49 & comment a (1982). In light of the above authorities, we are persuaded that the deficiencies determined by respondent which were settled in, and approved by, the bankruptcy court, and subsequently assessed against Mr. Kroh, constitute a cause of action that is different from the cause of action in the instant proceeding for res judicata purposes. Thus, the first prerequisite to the application of res judicata is not fulfilled.

We also observe that in the present case petitioner was not actually, or by implication, a party to her husband's bankruptcy proceeding. Petitioner must therefore show that she is in privity with her husband in order to invoke the principles of res judicata (or collateral estoppel) as to that proceeding. The issue of whether joint and several liability provided by section 6013(d)(3) creates privity, for purposes of res judicata and collateral estoppel, between a husband and wife who file a joint return was decided by the Tenth Circuit in *Tavery v. United States, supra* at 1033-1034 (quoting *Rodney v. Commissioner*, 53 T.C. 287, 307 (1969)). In an "alternative holding", the Tenth Circuit stated that such privity does not exist. Having determined that the first two prerequisites for the application of res judicata (i.e., the same claim and privity with respect to the prior litigation) are absent, we hold that

the doctrine of res judicata does not apply so as to preclude respondent from proceeding against petitioner for the full amounts of the deficiencies as determined in the deficiency notices.

Under the doctrine of collateral estoppel, or issue preclusion, the judgment in the prior suit only precludes, in the second cause of action, litigation of issues actually litigated and necessary to the outcome of the first action. Thus collateral estoppel is used to foreclose an adversary from relitigating an issue the adversary previously litigated unsuccessfully in a different action.

> In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

*United States v. International Building Co.,* 345 U.S. 502, 505 (1953) (quoting *Cromwell v. County of Sac,* 94 U.S. at 352-353).

We conclude that the judgment entered by the bankruptcy court was only a pro forma acceptance by the bankruptcy court of an agreement between respondent and Mr. Kroh's trustee in bankruptcy. Therefore, because petitioner has failed to show that the bankruptcy court actually decided any disputed issue with respect to the merits of her claim, collateral estoppel does not apply. *United States v. International Building Co., supra* at 505-506.

Furthermore, we have held that collateral estoppel may only be invoked against parties and their privies to a prior judgment. *Peck v. Commissioner,* 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990); *Gammill v. Commissioner,* 62 T.C. 607, 614-615 (1974). As we determined above, petitioner cannot be deemed either a party or a privy of her husband with respect to his bankruptcy court case simply because the two of them filed joint returns.

We reject petitioner's contention that only respondent's privity is relevant to her motion for partial summary judgment, and that she need not be deemed either a party or in privity with her husband with respect to the bankruptcy case in order for respondent to be estopped from proceeding against her in this Court. By making that argument, petitioner seeks

to offensively use nonmutual collateral estoppel[8] against the Government. We recognize that the Supreme Court, in recent years, has broadened the scope of collateral estoppel beyond its common-law limits by abandoning the requirement of mutuality of parties. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313 (1971). In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979), the Supreme Court conditionally approved the "offensive" use of collateral estoppel by a plaintiff who was not a party to the prior lawsuit.[9] However, the Supreme Court subsequently held in *United States v. Mendoza,* 464 U.S. 154, 162 (1984), that "nonmutual offensive collateral estoppel simply does not apply against the Government".

The Supreme Court also indicated in *Mendoza* that, for the same reasons, mutuality of parties is a· prerequisite to the application of res judicata against the Government. "The doctrine of res judicata, of course, prevents the Government from relitigating the same cause of action against the parties to a prior decision, but beyond that point principles of nonmutual collateral estoppel give way to the policies just stated." *United States v. Mendoza, supra* at 163 (fn. ref. omitted).

We find petitioner's reliance on *McQuade v. Commissioner,* 84 T.C. 137 (1985), as support for her position, to be misplaced. In that case, the bankruptcy court had determined the tax liability of both the husband-debtor and his wife even though only the husband had filed a petition in bankruptcy. The Tax Court was faced with the question of whether the taxpayer-wife should be deemed a "party" in the prior bankruptcy proceeding, even though she was not named as a debtor, so as to collaterally estop respondent in the Tax Court from litigat-

---

[8]Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.4 (1979).

[9]In *Parklane Hosiery Co. v. Shore, supra* at 329-331, decided prior to *United States v. Mendoza,* 464 U.S. 154 (1984), the Supreme Court stated that the trial judge in the exercise of his discretion should *not* allow the use of offensive collateral estoppel when a plaintiff (petitioner herein) could easily have joined in the earlier action or where the application of offensive estoppel would be unfair to a defendant (respondent herein), for example where the defendant did not have every incentive fully and vigorously to litigate the prior suit or where, in the plaintiff's action, the defendant would have procedural opportunities available to him that were not available to him in the prior suit of a kind likely to cause a different result.

ing tax deficiencies against the taxpayer-wife pertaining to issues already litigated by the bankruptcy court. We held that the taxpayer-wife, who was not a named party in the prior bankruptcy proceeding, should nevertheless be considered bound by the proceeding because she was named by respondent individually as the surviving wife and executrix of her husband's estate in the notice of deficiency and directed the course of litigation of the bankruptcy suit. *McQuade v. Commissioner, supra* at 145-146. Petitioner, in the case before us, did not assist in the prosecution or defense of her husband in the bankruptcy court and her attorney admitted at the hearing on this motion that she did not participate in the bankruptcy proceeding in any manner. Thus, petitioner has failed to show that she was a "party" in the bankruptcy case of her husband and, under *Tavery v. United States,* 897 F.2d 1032 (10th Cir. 1990), she is not his "privy" with respect to it.

Accordingly, as the prerequisites for the application of res judicata and collateral estoppel are not fulfilled, these doctrines do not preclude respondent from disputing any rights, issues, and facts previously determined by the bankruptcy court in Mr. Kroh's case.

The final issue raised in petitioner's partial summary judgment motion is whether she may litigate her additions to tax in the event we determine that respondent is collaterally estopped in litigating tax deficiencies greater than the amounts recovered from petitioner's bankrupt husband. We do not need to decide this final issue because we have held that the principles of res judicata and collateral estoppel do not apply in the instant cases and that respondent is not precluded from litigating the full amount of the tax deficiencies. We, therefore, will not address this question.

We have found that nothing arising out of Mr. Kroh's bankruptcy case precludes respondent in these cases from litigating the correctness of petitioner's tax deficiencies and additions to tax as those amounts were set forth by respondent in petitioner's deficiency notices. Since the deficiency notices and the petitions were properly and timely filed in these cases, the parties are entitled to our adjudication of the correctness of respondent's determinations, without regard to the payments made to respondent after petitioner's deficiency notices were issued. Sec. 6213(a). We have considered petitioner's

other arguments and have found them to be unpersuasive and without merit. In the event we uphold respondent's position on the substantive tax issues at trial, respondent will then be entitled to collect only those amounts that exceed the amounts collected in the bankruptcy case of petitioner's husband, the joint signer on petitioner's tax returns.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.
NIMS, CHABOT, PARKER, SHIELDS, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, WHALEN, HALPERN, and BEGHE, *JJ.,* agree with the majority opinion.

---

KÖRNER, *J.,* dissenting: I must respectfully dissent from the opinion of the majority in this case.

As written, the majority opinion holds that the bankruptcy court's determination of Mr. Kroh's tax liability (petitioner's husband) did not prevent respondent, either by res judicata or collateral estoppel, from pursuing the present action against petitioner for the *full amount of the deficiency and additions to tax as determined in respondent's notices of deficiency.* When this motion is considered under the doctrine of res judicata, as opposed to collateral estoppel, it appears that a contrary result is warranted. I would urge that the rule of res judicata applies in this proceeding.

1. *One Cause of Action*

The majority concludes that respondent's claim against Mr. Kroh is a separate and distinct cause of action from that of respondent's claim against petitioner.

The liability for tax for a particular year is considered to be a single cause of action. *Commissioner v. Sunnen,* 333 U.S. 591, 598 (1948); *Burford-Toothaker Tractor Co. v. Commissioner,* 192 F.2d 633, 634 (5th Cir. 1951), affg. 45 B.T.A. 1158 (1941); *Peck v. Commissioner,* 90 T.C. 162, 165-166 (1988), affd. 904 F.2d 525 (9th Cir. 1990); *Arnold v. United States,* 784

F. Supp. 773 (D. Ore. 1992). Where a joint return is filed, each spouse is jointly and severally liable for the full amount of the tax determined on the return, regardless of the amount of each spouse's taxable income. Sec. 6013(d)(3). In this respect, the regulations provide:

Although there are two taxpayers on a joint return, there is only one taxable income. The tax on the joint return shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several. [Sec. 1.6013-4(b), Income Tax Regs.]

The principle that the liability for tax for a particular year constitutes a single cause of action is not altered by the fact that a husband and wife who file a joint return are considered two separate and distinct taxpayers. As noted in the majority opinion, respondent may proceed against the spouses separately and obtain separate judgments against each. However, research of relevant case law reveals no authority that states that proceeding separately against spouses who file a joint return results in two separate causes of action. On the contrary, although the spouses are severally liable with respect to the tax, they are also jointly liable, "there is only one obligation for each year", and "Respondent is entitled to only one satisfaction of that obligation." *Dolan v. Commissioner,* 44 T.C. 420, 430 (1965); see *Erickson v. United States,* 159 Ct. Cl. 202, 309 F.2d 760, 767 (1962). As long as respondent is given the opportunity to litigate the full amount of tax due on the return, and intended to take advantage of that opportunity, both proceedings involve the same cause of action. Cf. *Nevada v. United States,* 463 U.S. 110, 130-134 (1983).

The majority relies primarily on *Dolan v. Commissioner, supra,* and *Tavery v. United States,* 897 F.2d 1032 (10th Cir. 1990), as support for the proposition that respondent's claims against petitioner and Mr. Kroh were two separate causes of action. Neither case supports their position.

In *Dolan v. Commissioner, supra,* this Court held that an agreed assessment against one spouse to a joint return, or in other words an administrative determination that one spouse *owed* tax, would not prevent respondent from proceeding against and obtaining a judgment against the other spouse for the same tax. From this holding, the majority claims that it has support for the proposition that a judicial determination that one spouse *does not owe tax* does not prevent respondent

from proceeding against and obtaining a judgment against the other spouse for that tax. Not only does the majority's analysis find no support in *Dolan,* it contradicts the common law authority we relied on in deciding that case. For example, 50 C.J.S., Judgments, sec. 759, at 283 (1947),[1] provides:

> Where an obligation is joint and several, an unsatisfied judgment against one of the obligors will not bar an action against another debtor, but a successful defense, going to the merits of the cause of action, by one joint and several debtor will bar an action against another debtor.

As can be seen from this passage, Mr. Kroh's successful defense going to the merits, see *infra,* of *the cause of action* should estop respondent in the instant matter from obtaining anything other than the unsatisfied judgment he obtained in the bankruptcy court.

For tax purposes, apparently only the Court of Appeals for the Tenth Circuit, to which appeal in this case lies, has discussed "cause of action" under facts similar to those present in the instant matter. *Tavery v. United States, supra; Conklin v. Commissioner,* 897 F.2d 1027 (10th Cir. 1990), revg. 91 T.C. 41 (1988). Those cases involved a wife and husband, respectively, who had previously litigated their respective liabilities on a joint return before different tribunals. In analyzing those cases, the Tenth Circuit stated that respondent had improperly "split * * * [her] cause of action on this joint return" by issuing the spouses separate statutory notices which had determined deficiencies *in different amounts. Conklin v. Commissioner, supra* at 1031. In the instant matter, respondent did not even attempt to split the cause of action since apparently in no year before the Court did the deficiency determined against petitioner vary in amount from the deficiency determined against Mr. Kroh.[2] Consequently, the Tenth Circuit's statement in *Tavery v. United States, supra* at 1033, that the claims against spouses to a joint return are "generally regarded as separate and distinct" should be interpreted as nothing more than support for the principle that respondent can proceed against the spouses separately for collection purposes, not as

---

[1]Cited at *Dolan v. Commissioner,* 44 T.C. 420, 427 (1965).

[2]Respondent issued a joint statutory notice for 1979 and 1980, and issued a separate statutory notice to petitioner for 1982. The majority opinion does not state whether the 1982 determined deficiencies were the same.

support for the proposition that separate causes of action are involved.[3]

Contrary to what is stated in the majority opinion, I would hold that the bankruptcy court did not merely determine Mr. Kroh's liability for tax; it determined the amount of tax due on the joint return. As we have already said, there is only one obligation for each year, which is the correct amount of tax owing on the joint return, i.e. one cause of action. *Dolan v. Commissioner, supra.* Respondent can proceed against petitioner separately and can obtain a separate judgment against her, but if res judicata applies here, which I believe it does, respondent should be bound by the prior judgment of the bankruptcy court, which includes the bankruptcy court's determination as to the amount of tax due on the joint return.

## 2. *Res Judicata*

Res judicata, as opposed to collateral estoppel, bars further claims by the parties or their privies on the *same* cause of action. *Montana v. United States,* 440 U.S. 147, 153 (1979). As the Supreme Court said in *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948), and as the majority itself recognizes:

The rule [of res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." * * * [Citations omitted.]

I believe that there was a single cause of action here, which was the liability for tax on the joint return which was filed by petitioner and her husband. That cause of action was determined in the bankruptcy court in the case of petitioner's

---

[3]The majority opinion states: "Because respondent is entitled to have the joint obligation of petitioner and Mr. Kroh satisfied only once, petitioner is potentially liable for paying only those amounts in excess of the taxes paid by the trustee in the bankruptcy case of her husband." Majority op. p. 397. How can this statement be rationalized except on the basis that there is only one obligation, i.e., one cause of action, which is the liability of Mr. Kroh and petitioner, jointly or severally, for the tax shown by the single joint return? Can it be that the husband's liability for tax on a joint return can be *adjudicated* in this Court to be X dollars, while the wife's liability for tax based on the same joint return, and nothing else appearing, can be *adjudicated* to be 10 X dollars, because respondent sends differing statutory notices to the spouses separately? I do not think that *Dolan v. Commissioner, supra,* holds that the principles of a single obligation and joint liability are to be ignored in this Court.

husband, a matter which the majority opinion correctly notes was within the jurisdiction of the bankruptcy court to handle.[4] It appears that the bankruptcy court's determination was a final judgment. Once the order of the bankruptcy court becomes final with respect to respondent's tax claims, generally neither the amount nor the validity of the bankruptcy court's order is subject to review or reconsideration by this Court. *McQuade v. Commissioner,* 84 T.C. 137, 145 (1985); *Comas, Inc. v. Commissioner,* 23 T.C. 8, 12 (1954). As noted by the majority in its note 7, a decision entered approving a stipulated settlement agreement is an adjudication on the merits for purposes of res judicata. *United States v. International Building Co.,* 345 U.S. 502, 506 (1953);[5] *Erickson v. United States,* 159 Ct. Cl. 202, 309 F.2d 760 (1962); *Sun Chemical Corp. v. United States,* 218 Ct. Cl. 702 (1978); *Maher v. United States,* 145 Ct. Cl. 701, 172 F. Supp. 689 (1959).

## 3. *Privity*

A privy is one who is "so identified in interest with another that he represents the same legal right". *United States v. California Bridge & Construction Co.,* 245 U.S. 337, 341 (1917). In part, the reason for limiting the application of res judicata to parties and privies "derives from the ancient principle that a person cannot be bound by a judgment unless he has had reasonable notice of the claim against him and an opportunity to be heard in opposition to that claim." 1B, Moore's Federal Practice, par. 0.411[1], at 388 (2d ed. 1992). A person cannot be bound, and will not be considered a privy, if it would violate due process. "[P]rivity * * * represents a

---

[4] The majority notes that the bankruptcy court lacked jurisdiction over petitioner and stresses that petitioner's tax liability was therefore completely separate and distinct from its determination of Mr. Kroh's liability, citing *Richmond v. United States,* 456 F.2d 458, 463 (3d Cir. 1972). In distinguishing *McQuade v. Commissioner,* 84 T.C. 137 (1985), however, the majority recognizes that the bankruptcy court's lack of jurisdiction over a taxpayer is actually irrelevant for purposes of imposing estoppel against the Government. We decided *McQuade v. Commissioner, supra,* using collateral estoppel principles. The majority, in interpreting *Richmond v. United States, supra,* unfortunately confuses two separate questions: the jurisdiction to determine *liability* versus the jurisdiction to determine *collectibility.*

[5] In view of this concession, I find it curious that the majority opinion continues to state "there was no actual adjudication on the merits of Mr. Kroh's tax liability", majority op. p. 396, and "the judgment entered by the bankruptcy court was only a pro forma acceptance by the bankruptcy court of an agreement between respondent and Mr. Kroh's trustee in bankruptcy." Majority op. p. 401. Surely, the "Compromise, Settlement Agreement and Stipulation", under which Mr. Kroh's liability was determined, as detailed in the majority's findings of fact, speaks for itself.

legal conclusion that the relationship between [parties] is sufficiently close to [support] preclusion." *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir. 1977); *Levy v. United States,* 776 F. Supp. 831 (S.D.N.Y. 1991).

Thus, the historic reason for limiting the application of res judicata to parties and their privies was to ensure that a litigant was not denied his day in court. However, under the common law theory that estoppels must be mutual, it also sometimes gave a party who had the opportunity to litigate his case in a prior proceeding the opportunity to relitigate it against a third party in a second proceeding. Recognizing that this person already has had a full and fair opportunity to present his case, the modern trend of courts has been to abandon the requirement of mutuality of parties when applying res judicata against the party who was bound by the prior action. As was stated in 46 Am. Jur. 2d, Judgments, sec. 522 at 674-675 (1969):

Indeed, in the more modern cases, some courts, departing from the doctrine of mutuality, have confined the requirement of privity to the party against whom the plea of res judicata is asserted, and have held that one not a party to a judgment nor in privity with such party may assert res judicata against a party bound by the judgment, so as to preclude the relitigation of an issue determined in the prior action * * * [Fn. refs. omitted.]

Several courts have abandoned the common law requirement of literal privity, and have held that courts should apply the doctrine of privity with flexibility. *Amalgamated Sugar Co. v. NL Industries, Inc.,* 825 F.2d 634, 640 (2d Cir. 1987); *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir. 1980); see also *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1174-1175 (10th Cir. 1979). While at common law literal privity was required, "federal courts have repeatedly held that judgments can bind persons not party to the litigation in question"; in this respect, "federal courts will bind a non-party whose interests were represented adequately by a party in the original suit." *Southwest Airlines Co. v. Texas International Airlines, supra* at 94-95. See also *Graves v. Associated Transport,* 344 F.2d 894 (4th Cir. 1965); *Bruszewski v. United States,* 181 F.2d 419 (3d Cir. 1950).

For purposes of collateral estoppel, in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979), "the Supreme Court made it

clear that a defendant who has a full and fair opportunity to litigate an issue in one action may be precluded from defending itself on the same issue in another action brought by a different party." *Starker v. United States,* 602 F.2d 1341, 1348 (9th Cir. 1979). On at least three occasions, including in this Court, respondent has had offensive[6] collateral estoppel used against her when she litigated an issue against one taxpayer, lost, and then attempted to litigate the same issue against a second taxpayer in a second proceeding. *Starker v. United States, supra; Graham v. Commissioner,* 76 T.C. 853 (1981); *Walsh v. United States,* 520 F. Supp. 377 (N.D. Tex. 1981).

For purposes of res judicata, the Supreme Court has recognized that the absence of mutuality does not necessarily prevent the doctrine from being imposed against the Government. *Nevada v. United States,* 463 U.S. 110, 143 (1983). Contrary to what was stated by the majority, *United States v. Mendoza,* 464 U.S. 154, 162 (1983), did not "indicate" otherwise since that case expressly recognized that it had permitted such a result in *Nevada. United States v. Mendoza, supra* at 163 n.8. Furthermore, the majority here has overruled this Court's opinion in *Graham v. Commissioner, supra,* without discussing "the effect, if any," *Mendoza* should actually have on it. *McQuade v. Commissioner,* 84 T.C. 137, 144 (1985). In this respect, I believe the majority quotes *Mendoza* out of context by flatly stating that "nonmutual offensive collateral estoppel simply does not apply against the Government", majority op. p. 402.[7]

---

[6]As noted by the majority, nonmutual collateral estoppel is termed "offensive" or "defensive" depending on whether it is a plaintiff or a defendant, respectively, moving for it. It has been stated that this distinction "blurs" in tax cases. *Walsh v. United States,* 520 F. Supp. 377, 381 (N.D. Tex. 1981). In the instant matter, it becomes even more blurry since respondent is the defendant herein but is analyzed as the plaintiff, i.e., "respondent can proceed against the spouses separately." Regardless, the requirements of *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979), for employing estoppel offensively are met. The majority's implication that petitioner could easily have joined in her husband's bankruptcy proceeding but "chose not to file a petition" in bankruptcy is disingenuous; it is conceded that petitioner herein had no *right* to file a petition and become a party in her husband's bankruptcy case, but the identity of interest between the spouses as to their joint tax liability supports the conclusion that she (as well as respondent) should be bound by the result in the bankruptcy court. See *Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 85 (5th Cir. 1977). Additionally, there is no evidence that respondent did not have the opportunity to litigate her case in the bankruptcy court.

[7]The Supreme Court stated that "nonmutual collateral estoppel simply does not apply against the Government in such a way as to preclude relitigation of issues such as those involved in this case." *Mendoza v. United States,* 464 U.S. 154, 162 (1984). While the majority emphasizes the first 10 words of this quote, other courts have held that the rule against applying nonmutual

Under the modern trend of the authorities, which I have mentioned above, I believe that respondent had a full and fair opportunity to litigate the joint and several liability of this petitioner (and her husband) on their joint tax return in the bankruptcy proceeding of petitioner's husband; that this single tax liability was one cause of action; and that when it was determined in the bankruptcy proceeding, it operated as res judicata as to the tax liability of this petitioner on that joint return in this proceeding before us, even if she was not a formal party to the husband's bankruptcy proceeding.

Even if it is held that privity is necessary in order to invoke res judicata in the present situation, I would submit that such privity exists. As we have seen above, there is only one cause of action here, and that is liability for the single tax (be it joint or several) which is engendered by the joint return which was signed by petitioner and her husband. To me it is simply ludicrous to say that when a husband and wife sign a single joint income tax return, there is no privity between them as to this return and the liability shown therein.[8] The majority opinion apparently relies upon *Tavery v. United States,* 897 F.2d 1032 (10th Cir. 1990), which says there is no privity between parties to a joint return, citing *Rodney v. Commissioner,* 53 T.C. 287 (1969), a three-judge plurality opinion, with six judges concurring and a powerful dissent by six judges. The *Rodney* case, unfortunately, has been loaded with more baggage than it can bear. An examination of the case reveals that the only issue presented to the Tax Court in that case was whether or not there was privity between husband and wife on a joint return *as to fraud.* This Court held that such privity did not exist, but it must be understood that the only holding was that there was no privity between the spouses on the

---

estoppel against the Government is not absolute. E.g., *Benjamin v. Coughlin,* 905 F.2d 571 (2d Cir. 1990); *NLRB v. Donna-Lee Sportswear Co.,* 836 F.2d 31 (1st Cir. 1987); *Colorado Springs Production Credit Association v. Farm Credit Admin.,* 669 F. Supp. 1044 (D. Colo. 1987).

[8]"Privity" is defined by Black's Law Dictionary 1079 (5th ed. 1979) as:

such an identification of interest of one person with another as to represent the same legal right. Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest. * * *

Concept of "privity" pertains to the relationship between a party to a suit and a person who was not a party, but whose interest in the action was such that he will be bound by the final judgment as if he were a party.

Private knowledge; joint knowledge with another of a private concern; cognizance implying a consent or concurrence. * * *

[Citations omitted.]

question of fraud, which is a particularly personal matter of intent, and was not to be imputed to one spouse from the other. It should be noted that at the time *Rodney* was decided, the statute with respect to fraud (section 6653(b) in the present case) did not specifically require a separate determination by respondent of fraud against each spouse. So far as it goes, therefore, *Rodney* was perfectly good law (although now made moot by the provisions of Pub. L. 91-679, sec. 2, 84 Stat. 2063 (1971), requiring a separate determination of fraud as to each spouse in a joint return). *Rodney,* however, does *not* stand for the proposition that there is no privity between spouses to a joint return, with respect to the tax liability itself, despite dicta to this effect in the opinion. See *Rodney v. Commissioner, supra* at 325 (Dawson, J., dissenting).

## 4. *Conclusion*

A court "may not decline to apply res judicata in the interests of common sense and simple justice". *Russell v. Commissioner,* 678 F.2d 782, 785 n.3 (9th Cir. 1982) (citing *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394 (1981)); *Arnold v. United States,* 784 F. Supp. 773 (D. Ore. 1992). This case is merely a further proceeding on the same cause of action as was present in the case of petitioner's husband before the bankruptcy court. The same issues of fact and law concerning the same liability for the same tax are at issue in both proceedings. There can be only one obligation with respect to this tax. The bankruptcy court has determined the deficiency, interest, and additions to tax that are owed on this joint return, and its determination is entitled to res judicata effect. For these purposes, it does not matter that the judgment of the bankruptcy court was arrived at pursuant to a stipulation between the parties. *United States v. International Building Co.,* 345 U.S. 502 (1953). In the majority opinion, it is stated that there must be three conditions met by petitioner in order for the doctrine of res judicata to apply in this case; viz:

(1) The cause of action in the prior bankruptcy case of petitioner's husband is the same cause of action as in the instant proceeding; (2) petitioner qualifies as a party or a privy of her husband with respect to his bankruptcy case, and (3) the approval by the bankruptcy court of Mr. Kroh's

settlement agreement with respondent constitutes a final judgment on the merits of the single cause of action. [Majority op. pp. 398-399.]

I submit that all three of those conditions have been satisfied in this case, insofar as the tax liability for the tax owing on the joint return of petitioner and Mr. Kroh is concerned.

In petitioner's case before this Court, the only new issues of fact and law, and consequently the only matters that should be considered outside res judicata, are those defenses to tax liability that are uniquely petitioner's and which petitioner's husband was incapable of raising in the first proceeding, e.g., petitioner's innocent spouse status. Since petitioner's husband has already paid the deficiency, the only issues left to determine are whether petitioner has any personal defenses that would prohibit respondent from collecting the additions to tax from her. Accordingly, I would grant petitioner's motion for summary judgment in part, as to the liability for tax and additions thereto, based upon res judicata, leaving open only the issue of petitioner's liability as an innocent spouse.

COHEN, *J.,* agrees with this dissent.