# United States Tax Court

REVIEWED
165 T.C. No. 7

THE DAVID AND BARBARA GREEN 1993 DYNASTY TRUST,
MART D. GREEN, TRUSTEE, ET AL.,[1]
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 19631-19, 19632-19,
19633-19, 19634-19,
19635-19.

Filed October 2, 2025.

————

Ps are electing small business trusts and individuals who own shares of S, an S corporation. S's 2011 and 2012 federal income tax returns claimed charitable contribution deductions for donations of numerous artifacts. Each return included Form 8283, Noncash Charitable Contributions, which had been prepared by S. Each Form 8283 included a description of the group of contributed artifacts and reported an aggregate basis and fair market value and a range of acquisition dates for the group. Each return also included portions of an appraisal report describing and valuing each artifact. S used the services of an accounting firm to review each return before filing.

Each P deducted, on its 2011 and 2012 federal income tax returns, its pro rata share of the fair market

---

[1] The following cases are consolidated herewith: Green Stewardship Trust f.k.a. Green Management Trust and Green Family Management Trust, David M. Green, Barbara A. Green, Steven T. Green, Mart D. Green, and Darsee Lett, Co-Trustees, Docket No. 19632-19; Green Family Delta Trust, Steven T. Green and Mart D. Green, Co-Trustees, Docket No. 19633-19; Mart D. Green and Diana K. Green, Docket No. 19634-19; and Steven T. Green and Jackie D. Green, Docket No. 19635-19.

value of the artifacts reported on S's information return for the same year. R disallowed all the deductions in Notices of Deficiency issued to each P and determined against each P a gross valuation misstatement penalty under I.R.C. § 6662(a) and (h) or, in the alternative, a substantial valuation misstatement penalty under I.R.C. § 6662(a) and (b)(3).

The parties filed Cross-Motions for Partial Summary Judgment pertaining to (1) certain substantiation issues under I.R.C. § 170 and (2) the rules governing charitable contribution deductions for trusts under I.R.C. §§ 641, 642, 681, 512, and 170.

*Held*: Genuine issues of material fact exist as to the potential application of the reasonable cause defense under I.R.C. § 170(f)(11)(A)(ii)(II), and summary adjudication on the substantiation issues is not warranted.

*Held, further*, neither side has demonstrated it is entitled to the rulings it seeks with respect to the rules governing charitable contribution deductions for trusts.

*Held, further*, both R's Motions and Ps' Motions will be denied.

TORO, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and KERRIGAN, BUCH, PUGH, ASHFORD, COPELAND, JONES, GREAVES, WEILER, LANDY, ARBEIT, and FUNG, *JJ.*, joined.

MARSHALL, *J.*, wrote a dissenting opinion, which GUIDER and JENKINS, *JJ.*, joined.

JENKINS, *J.*, wrote a dissenting opinion, which NEGA, WAY, and GUIDER, *JJ.*, joined in full, and which MARSHALL, *J.*, joined as to Parts I and III.

————

*Kurt M. Rupert, Michael A. Furlong, Judith Leslie LaReau, Charles E. Geister III*, and *Len Burford Cason*, for petitioners.

*Vassiliki Economides Farrior, Kristen I. Nygren, William F. Castor, Daniel J. Lavassar, Henry C. Bonney*, and *Naseem Jehan Khan*, for respondent in docket No. 19631-19.

*Vassiliki Economides Farrior, Kristen I. Nygren, William F. Castor, Daniel J. Lavassar*, and *Henry C. Bonney*, for respondent in docket Nos. 19632-19, 19633-19, 19634-19, and 19635-19.

OPINION

TORO, *Judge*: Now before the Court in these deficiency cases are two sets of Cross-Motions for Partial Summary Judgment. As we explain below, we will deny each Motion.

*Background*

We derive the following background from the Stipulations of Facts with accompanying Exhibits, which are incorporated by reference, and the Motion papers. The background is set forth solely to rule on the Motions and not as findings of fact for these cases. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The parties have stipulated that the U.S. Court of Appeals for the Tenth Circuit is the appellate venue for these cases. *See* I.R.C. § 7482(b)(2).[2]

I. *Ownership of Hobby Lobby Stores, Inc.*

These cases involve three electing small business trusts[3]—the David and Barbara Green 1993 Dynasty Trust, the Green Stewardship Trust, and the Green Family Delta Trust (together, Trusts)—and two married couples—Mart D. and Diana K. Green as well as Steven T. and

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[3] In tax parlance, electing small business trusts are commonly referred to as "ESBTs," and we follow that convention for convenience.

Jackie D. Green—who own shares of Hobby Lobby Stores, Inc. (Hobby Lobby). Hobby Lobby, an arts and crafts retailer, is an S corporation within the meaning of section 1361.[4]

The Trusts and the Greens owned more than 99% of Hobby Lobby during the 2011 and 2012 tax years (years at issue). The following chart shows their respective shares of ownership.

| Shareholder | Percentage Ownership |
|---|---|
| The David and Barbara Green 1993 Dynasty Trust | 88.2267% |
| The Green Stewardship Trust | 0.1392% |
| The Green Family Delta Trust | 8.1839% |
| Mart D. and Diana K. Green (through the Mart D. Green Succession Trust) | 1.0323% |
| Steven T. and Jackie D. Green (through the Steven T. Green Succession Trust) | 2.0654% |
| Nonparty | 0.3525% |
| Total | 100% |

II.     *The Donations and Relevant Tax Returns*

In the years at issue, Hobby Lobby donated to the Museum of the Bible, Inc. (Museum), a section 501(c)(3) organization, more than 1,200 Hebrew biblical scrolls, biblical manuscripts in Hebrew, Greek, Latin, and Aramaic, and printed books and Bibles dating between 1455 and

---

[4] Subchapter S of chapter 1 of the Code governs the tax treatment of S corporations. Although subchapter S generally restricts an S corporation's shareholders to individuals, it allows certain types of trusts to hold S corporation shares, including ESBTs and trusts treated under subchapter J, part I, subpart E, as wholly owned by individuals who are citizens or residents of the United States. *See* I.R.C. § 1361(b)(1)(B), (c)(2)(A)(i), (v).

1782.[5] For convenience, we will refer to the property donated to the Museum as the Contributed Artifacts.

On its income tax returns for those years, Hobby Lobby claimed noncash charitable contribution deductions of $23,038,000 and $61,633,000 with respect to the Contributed Artifacts.[6] Consistent with the rules governing S corporations and their shareholders, the Trusts and the Greens reported their ratable shares of the deductions on their federal income tax returns.[7]

A. *Hobby Lobby's Form 8283 for Taxable Year 2011*

Hobby Lobby attached Form 8283, Noncash Charitable Contributions (Rev. December 2006), to its 2011 Form 1120–S. Hobby Lobby used the services of accounting firm Grant Thornton LLP to review its work papers and Form 1120–S, including the Form 8283, before the return's filing.

Hobby Lobby reported on the Form 8283 that it contributed to the Museum "431 Manuscript Hebrew Biblical Scrolls: Medieval, Renaissance, Enlightenment, & modern: 15th Century to 20th Century. Europe, Africa, and Middle East." Doc. 23, Ex. 99-J. On the same form, Hobby Lobby reported that it purchased the Contributed Artifacts between December 2009 and September 2010, that they had an aggregate basis of $1,753,432 and an aggregate appraised fair market value of $23,038,000 at the time of the contribution, and that they were contributed on December 30, 2011.

Hobby Lobby also attached to the 2011 Form 1120–S, sections of an appraisal report by Lee Raffaele Biondi of Biondi Rare Books and

---

[5] Gifts by an S corporation to a section 501(c)(3) organization may be charitable contributions within the meaning of section 170(c) that are deductible to the shareholders of the S corporation under section 170(a) or section 642(c)(1).

[6] An S corporation reports items, including deductions, to its shareholders and the Internal Revenue Service (IRS) on an information return, Form 1120–S, U.S. Income Tax Return for an S Corporation. *See* I.R.C. § 6037(a) and (b); Treas. Reg. § 1.1366-1(a)(1). The shareholders take these items into account on their own returns. *See* I.R.C. § 1366(a).

[7] The Trusts claimed their own shares of the deductions, and the Greens claimed successor trusts' shares of the deductions. Each deducted the product of its Hobby Lobby ownership percentage and Hobby Lobby's total claimed charitable contribution deduction. The total claimed deduction was based on the appraised fair market value of the Contributed Artifacts that Hobby Lobby reported.

Manuscripts, which described and valued each scroll as of December 30, 2011.[8] The appraisal report indicated that the value per item ranged from $1,000 to $295,000. It did not identify, however, the acquisition date or basis for the individual scrolls. Mr. Biondi signed the Form 8283 declaration of appraiser on or about July 31, 2012.

B.     *Hobby Lobby's Form 8283 for Taxable Year 2012*

Hobby Lobby attached Form 8283 (Rev. December 2012) to its 2012 Form 1120–S. As it did for 2011, Hobby Lobby used the services of Grant Thornton to review its work papers and Form 1120–S, including the Form 8283, before the return's filing.

Hobby Lobby reported on the Form 8283 that it contributed "[o]ver 800 Ancient & Medieval Biblical Manuscripts in Hebrew, Greek, Latin, and Aramaic, and printed books and Bibles (1455-1782)." Doc. 23, Ex. 101-J. Hobby Lobby also reported that it purchased the Contributed Artifacts from December 2008 to August 2011, that they had an aggregate basis of $18,749,758 and an aggregate appraised fair market value of $61,633,000 at the time of the contribution, and that they were contributed on December 31, 2012.

As it had for 2011, Hobby Lobby attached sections of an appraisal report from Mr. Biondi to the information return that described and valued each artifact as of December 31, 2012.[9] The appraisal report set forth a wide value range for the items donated in 2012, with several items identified as having zero value while multiple others were valued in the millions of dollars, up to a high of $9,500,000.

In connection with the 2012 appraisal report, Mr. Biondi prepared a Uniform Standards of Professional Appraisal Practice certification, in which he explained that he had inspected some of the Contributed Artifacts "in the company of Michael Thompson and Carol Sandberg" of Michael R. Thompson Rare Books, Doc. 19, Ex. 44-J, at 33, and that Mr. Thompson and Ms. Sandberg had provided "personal property valuation assistance," *id.* at 35. Mr. Biondi further explained in the certification that "the Appraisal Report is solely mine—this is not a joint

---

[8] Specifically, Hobby Lobby excluded sections 4, 5, and 6 of the appraisal report. Those sections included background information on Sefer Torah scrolls, regional histories of Jewish cultural centers, and the Hebrew Alphabet, respectively.

[9] Hobby Lobby omitted the same sections from the 2012 appraisal report as it had from the 2011 appraisal report.

appraisal—and all information and valuation opinions herein are strictly my responsibility." *Id.* at 35. The valuations of several Contributed Artifacts in the report are accompanied, however, by a statement signed by Mr. Thompson and Ms. Sandberg that they "conclude and express [the] Fair Market Value" of the relevant artifact or that they "concur with Mr. Biondi's Fair Market Value opinion." The appraisal report describes the credentials of Mr. Biondi, Mr. Thompson, and Ms. Sandberg. Mr. Biondi signed the Form 8283 declaration of appraiser on or about August 15, 2013, but the return did not include a declaration of appraiser from Mr. Thompson or Ms. Sandberg.

C. *Grant Thornton Review of Hobby Lobby Returns*

In a Declaration submitted in connection with the Motions, Jeffrey Williams, Hobby Lobby's assistant vice president–tax, explains the following concerning the company's tax return preparation practices:

7. During 2011 and 2012, HLSI used the services of Grant Thornton, LLP to review [Hobby Lobby's] work papers and federal tax returns prior to filing, and to file [Hobby Lobby's] federal tax returns.

8. If Grant Thornton had any questions, comments, or concerns regarding either the work papers or the federal returns, these were discussed with [Hobby Lobby], typically by telephone.

9. Once Grant Thornton finalized their review of the federal tax returns and work papers, [Hobby Lobby] would finalize preparation of all state tax returns, and the state tax returns and any additional work papers prepared were likewise delivered to Grant Thornton for review.

10. [Hobby Lobby] relied on Grant Thornton to raise any compliance issues regarding [Hobby Lobby's] 2011 and 2012 federal tax returns, including the Form 8283 appraisal summaries prior to filing.

11. No such issues were raised by Grant Thornton with respect to the 2011 and 2012 Form 8283 appraisal summaries.

Doc. 54, Ex. 1 (Declaration of Jeffrey Williams).

III.    *IRS Examination and Petitions to This Court*

The Commissioner examined Hobby Lobby's returns for the years at issue and made adjustments. Eventually, the Commissioner issued Notices of Deficiency to the Trusts and the Greens in connection with those adjustments. The Notices of Deficiency determined that no deductions should be allowed with respect to the Contributed Artifacts because "[i]t has not been established that all the requirements of section 170 . . . have been satisfied."[10] The Notices also determined gross valuation misstatement penalties under section 6662(a), (b)(3), and (h) or, in the alternative, substantial valuation misstatement penalties under section 6662(a), (b)(3), and (e).

Petitions seeking redetermination of the deficiencies and penalties were timely filed in our Court. The cases were consolidated, and the Motions now before us followed in due course.[11]

IV.    *The Parties' Motions*

A.    *Cross-Motions on Substantiation Issues*

The Commissioner's first Motion asks us to hold that no deductions are allowed for the contributions Hobby Lobby made to the Museum because the Forms 8283 included in Hobby Lobby's returns contain several defects and "violate [the Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369,] § 155(a)(1)(C)[, 98 Stat. 494, 691,] and the requirements prescribed by the Secretary [of the Treasury] in [certain] Treasury Regulations." Resp't's Mot. for Partial Summ. J. 1 (Doc. 42).

More specifically, the Commissioner takes the position that DEFRA § 155(a)(3), 98 Stat. at 691, and Treasury Regulation § 1.170A-13(c)(4)(ii) required Hobby Lobby to include the individual basis and date of acquisition of each of the Contributed Artifacts on its Forms 8283 for the years at issue. Because Hobby Lobby included only aggregate

---

[10] In the alternative, the Commissioner determined that the Trusts and the Greens were entitled to reduced deductions, totaling $2,401,334 for 2011 and $18,683,572 for 2012, based on his view of the Contributed Artifacts' fair market values. The alternative values represent roughly 10% and 30% of the claimed deductions, respectively.

[11] In a separate opinion filed concurrently herewith, *Green 1993 Dynasty Trust v. Commissioner*, T.C. Memo. 2025-100, the Court addresses two other Motions relating to the penalties at issue.

information, the Commissioner contends, its Forms 8283 were insufficient to substantiate its claimed deductions.

Moreover, with respect to the Form 8283 for 2012, the Commissioner maintains that two appraisers in addition to Mr. Biondi (Mr. Thompson and Ms. Sandberg) contributed to the appraisal report, but did not sign the Form 8283 as required by Treasury Regulation § 1.170A-13(c)(5)(iii). The Commissioner also observes that, if the Motion is granted, trial will still be necessary on valuation issues related to the determined penalties.

The Trusts' and the Greens' responses to the Commissioner's arguments fall into four main categories. The first is that they strictly complied with the applicable substantiation rules. The second is that they substantially complied with those rules, relying in part on *Bond v. Commissioner*, 100 T.C. 32, 41–42 (1993) (holding that certain of the regulatory reporting requirements of Treasury Regulation § 1.170A-13(c) can be satisfied, in appropriate circumstances, by substantial, rather than literal, compliance). The third is that even if they did not comply with the rules, their noncompliance was attributable to reasonable cause on account of their reliance on the services of Grant Thornton and is thus protected by section 170(f)(11)(A)(ii)(II). And the fourth is that the substantiation rules at issue did not apply to them, either because as S corporation shareholders their only obligation was to attach Hobby Lobby's Forms 8283 to their returns, or because, with respect to the Trusts only, neither DEFRA nor the related regulations apply to them.

The Trusts and the Greens appear to maintain that their arguments under the first, second, and fourth categories justify partial summary judgment in their favor on the substantiation issues. Their reasonable cause argument appears only to be defensive—that is, it may serve to defeat the Commissioner's Motion but would not justify partial summary judgment for the Trusts and the Greens.

The Commissioner disagrees with the Trusts and the Greens on all counts.

B.     *Cross-Motions with Respect to the Trusts*

The Commissioner's second Motion offers an alternative rationale for fully disallowing the charitable contribution deductions the Trusts claimed. Specifically, the Commissioner seeks a ruling that the Trusts' shares of the noncash charitable contributions from Hobby Lobby that

would otherwise be allowable under section 642(c) are fully disallowed by section 681 because they are entirely allocable to the Trusts' unrelated business income.

Alternatively, the Commissioner claims that, under the Tenth Circuit decision in *Green v. United States*, 880 F.3d 519 (10th Cir. 2018), the Trusts' deductions are limited to their shares of Hobby Lobby's adjusted bases in the Contributed Artifacts, rather than the fair market values.

With respect to the Commissioner's effort entirely to disallow their deductions, the Trusts retort that the Motion ignores applicable Treasury regulations and that those regulations clearly permit partial deductions for charitable contributions allocable to the Trusts' unrelated business income. They point specifically to Treasury Regulation § 1.681(a)-2(a) as support for their view.

As to the Commissioner's alternative argument, the Trusts maintain that the Tenth Circuit's decision is distinguishable because the deductions here are governed by section 641(c), which provides special rules for the taxation of ESBTs, rather than section 642(c). Based on the interplay among sections 641, 681, 512(b)(11), and 170, in their view, the deductions should be allowed at fair market values, but within the limits prescribed by section 170(b)(1)(A).

*Discussion*

I.   *Partial Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials. *FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). The Court may grant partial summary judgment when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 121(a)(1) and (2); *Elec. Arts, Inc. v. Commissioner*, 118 T.C. 226, 238 (2002); *see also Take v. Commissioner*, 82 T.C. 630, 633 (1984) (explaining that if both parties move for summary judgment or partial summary judgment, this rule applies to each motion), *aff'd*, 804 F.2d 553 (9th Cir. 1986). In considering the Motions, we construe factual materials and inferences drawn from them in the light most favorable to each nonmoving party. *See Sundstrand Corp.*, 98 T.C. at 520.

The party moving for summary judgment bears the burden of showing an absence of any dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). If the burden of persuasion at trial would be on the nonmoving party, the movant may carry this burden by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.*; *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the movant makes this showing, the burden shifts to the nonmovant to set forth specific facts showing there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Tesone*, 942 F.3d at 994. The nonmoving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing there is a dispute. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520.

II.    *Charitable Contribution Deductions*

A.    *Overview of Governing Legal Framework*

Section 170(a)(1) allows as a deduction any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property when contributed. Treas. Reg. § 1.170A-1(c)(1). "A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary." I.R.C. § 170(a)(1).

Congress has been particularly interested in certain of the verification requirements for charitable contributions. For example, in 1984, in an off-Code provision in DEFRA § 155(a)(1) and (2), 98 Stat. at 691, Congress directed the Secretary to issue regulations under section 170(a)(1) "which require any individual, closely held corporation, or personal service corporation claiming a deduction under section 170" greater than $5,000 to "obtain a qualified appraisal for the property contributed," "attach an appraisal summary to the return on which such deduction is first claimed for such contribution," and "include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations." DEFRA also directed that the regulations "require the taxpayer to retain any qualified appraisal," DEFRA § 155(a)(1) (flush language), but did not direct that the appraisals be attached to the relevant returns. In response to DEFRA's directive, the Secretary added paragraph (c) to Treasury Regulation § 1.170A-13.

Twenty years after DEFRA, Congress decided to codify and expand the concepts reflected in DEFRA and the regulations thereunder by adding paragraph (11) to section 170(f). *See, e.g.*, *Murphy v. Commissioner*, T.C. Memo. 2023-72, at \*28 n.13 (citing American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, § 883(a), 118 Stat. 1418, 1631); *Pankratz v. Commissioner*, T.C. Memo. 2021-26, at \*20 (same); *Belair Woods, LLC v. Commissioner*, T.C. Memo. 2018-159, at \*22 (same).

Section 170(f)(11)(A)(i) provides:

> In the case of an individual, partnership, or corporation, no deduction shall be allowed under subsection (a) for any contribution of property for which a deduction of more than $500 is claimed unless such person meets the requirements of subparagraphs (B), (C), and (D), as the case may be, with respect to such contribution.

Subparagraphs (B), (C), and (D) set out increasingly stringent substantiation rules based on the amount of the donation involved.

Subparagraph (B) governs "contributions of property for which a deduction of more than $500 is claimed." Its requirements are met "if the individual, partnership or corporation includes with the return for the taxable year in which the contribution is made a description of such property and such other information as the Secretary may require."[12] I.R.C. § 170(f)(11)(B).

Subparagraph (C) governs "contributions of property for which a deduction of more than $5,000 is claimed." Its requirements are met "if the individual, partnership, or corporation obtains a qualified appraisal of such property and attaches to the return for the taxable year in which such contribution is made such information regarding such property and such appraisal as the Secretary may require." I.R.C. § 170(f)(11)(C).

Subparagraph (D) governs "contributions of property for which a deduction of more than $500,000 is claimed." Its requirements are met "if the individual, partnership, or corporation attaches to the return for the taxable year a qualified appraisal of such property." I.R.C. § 170(f)(11)(D). Put another way, while DEFRA directed the Secretary to require taxpayers to obtain and keep qualified appraisals for

---

[12] The requirements of section 170(f)(11)(B) do not apply "to a C corporation which is not a personal service corporation or a closely held C corporation."

contributions of more than $5,000, section 170(f)(11)(D) now requires that for contributions of more than $500,000 the qualified appraisal itself, not just a summary, must be attached to the return.

Two further subparagraphs of section 170(f)(11) merit a brief mention here. Subparagraph (F) provides that "[f]or purposes of determining thresholds under this paragraph [i.e., section 170(f)(11)], property and all similar items of property donated to 1 or more donees shall be treated as 1 property." I.R.C. § 170(f)(11)(F). Subparagraph (G) provides that, "[i]n the case of a partnership or S corporation, this paragraph shall be applied at the entity level, except that the deduction shall be denied at the partner or shareholder level." I.R.C. § 170(f)(11)(G).

B.  *New Statutory Reasonable Cause Defense*

The statutory changes brought about by the AJCA were not all bad news for taxpayers. While expanding the substantiation requirements, Congress also provided "an escape hatch." *Pankratz*, T.C. Memo. 2021-26, at *21. Section 170(f)(11)(A)(ii)(II) expressly provides that section 170(f)(11)(A)(i)—the rule denying the deduction on substantiation grounds—"shall not apply if it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect."

We have previously described section 170(f)(11)(A)(ii)(II) as "a new statutory 'reasonable cause' defense for failure to comply with the regulatory reporting requirements." *Belair Woods*, T.C. Memo. 2018-159, at *22. "This statutory 'reasonable cause' defense is broader than the regulatory 'reasonable cause' defense" that the Secretary had promulgated in response to DEFRA. *Id.*

The regulatory "defense is limited to situations where the taxpayer has reasonable cause 'for being unable to provide the information required.'" *Id.* (quoting Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(*1*)).

By contrast, the "formulation of the section 170(f)(11)(A)(ii)(II) defense—referring to the existence of 'reasonable cause' and the absence of 'willful neglect'—resembles that appearing in numerous Code provisions that impose penalties or additions to tax." *Id.* (citing I.R.C. §§ 6039G(c)(2), 6704(c)(1), 6652(f)–(j), 6709(c)). And we generally interpret Code provisions that use the same words to have the same meaning. *See id.* (citing *Elec. Arts, Inc.*, 118 T.C. at 241). "Thus,

although the section 170(f)(11)(A)(ii)(II) 'reasonable cause' defense relieves the taxpayer from disallowance of a deduction rather than from imposition of a penalty, we have construed these defenses similarly." *Id.* at \*23 (first citing *Alli v. Commissioner*, T.C. Memo. 2014-15, at \*60; and then citing *Crimi v. Commissioner*, T.C. Memo. 2013-51, at \*98–99).

"Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the challenged item. . . . Thus, the inquiry is inherently a fact-intensive one, and facts and circumstances must be judged on a case-by-case basis." *Crimi*, T.C. Memo. 2013-51, at \*99 (first citing *United States v. Boyle*, 469 U.S. 241 (1985); and then citing *Rothman v. Commissioner*, T.C. Memo. 2012-163, 103 T.C.M. (CCH) 1846, 1874 (2012)); *accord* Treas. Reg. § 1.6664-4(b)(1) ("The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances."); *see also Grecian Magnesite Mining, Indus. & Shipping Co. v. Commissioner*, 149 T.C. 63, 94 (2017) (same), *aff'd*, 926 F.3d 819 (D.C. Cir. 2019).

A taxpayer's reliance on the advice of a professional, such as a certified public accountant, constitutes a valid defense if the taxpayer proves by a preponderance of the evidence that (1) the taxpayer reasonably believed the professional was a competent tax adviser with sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the professional's advice. *See, e.g.*, *Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); *Crimi*, T.C. Memo. 2013-51, at \*99; *Alli*, T.C. Memo. 2014-15, at \*61.

III.    *Resolution of the Motions*

A.    *Cross-Motions on Substantiation Issues*

On the substantiation issues, we begin (and end) our analysis with the Trusts' and the Greens' invocation of the reasonable cause defense under section 170(f)(11)(A)(ii)(II).

As we have consistently explained, the defense provides an "escape hatch," *Pankratz*, T.C. Memo. 2021-26, at \*21, from an otherwise "demanding regime," *Murphy*, T.C. Memo. 2023-72, at \*25, for substantiating noncash charitable contributions, *see, e.g.*, *id.* at \*37 ("[The taxpayers'] omission of their cost bases in the donated properties on Forms 8283 [would] be excused for reasonable cause, so that we will

not disallow their charitable contribution deductions for failure to comply with the reporting requirements of section 170(f)(11) and Treasury Regulation § 1.170A-13(c)."); *Presley v. Commissioner*, T.C. Memo. 2018-171, at \*64–70 (analyzing the requirements for reasonable cause and declining to find reasonable cause because the taxpayer did not follow the advice given), *aff'd*, 790 F. App'x 914 (10th Cir. 2019); *Chrem v. Commissioner*, T.C. Memo. 2018-164, at \*16–25 (analyzing whether the defense applies and denying partial summary judgment); *Belair Woods*, T.C. Memo. 2018-159, at \*22–24 (denying in part partial summary judgment based on the possible application of reasonable cause); *Crimi*, T.C. Memo. 2013-51, at \*102 ("[The taxpayers were] entitled to a deduction for the charitable contribution of the subject property even if [they] did not attach a qualified appraisal required under the Code and the regulations, because any failure to comply with the requirement is excused on the ground of reasonable cause.").

Application of the defense "relieves the taxpayer from disallowance of [the claimed charitable contribution] deduction." *Belair Woods*, T.C. Memo. 2018-159, at \*23. Put another way, if the defense applies, the Trusts and the Greens would no longer have to worry about the substantiation requirements set out in subparagraphs (B), (C), and (D) of section 170(f)(11). Moreover, if the defense is available, the Court would not need to resolve whether the Forms 8283 for the years at issue complied with the relevant statutory and regulatory requirements, either strictly or substantially, or whether they were required to, mooting many of the thorny (and in part novel) legal issues reflected in the parties' Motion papers.

Whether the defense is available here is a factual question that requires a trial. As we have recognized, the reasonable cause inquiry under section 170(f)(11) "is inherently a fact-intensive one, and facts and circumstances must be judged on a case-by-case basis." *See Crimi*, T.C. Memo. 2013-51, at \*99; *see also, e.g.*, *Boyle*, 469 U.S. at 249 n.8 ("Whether the elements that constitute 'reasonable cause' are *present* in a given situation is a question of fact . . . ."). An evaluation of whether the taxpayers "exercised ordinary business care and prudence as to the challenged item," *Crimi*, T.C. Memo. 2013-51, at \*99, requires an understanding of the facts concerning the item. That evaluation cannot be made on the record now before us.

Moreover, where (as here) taxpayers claim to have relied on a professional, such as a certified public accountant, we must evaluate (among others) the expertise of the adviser, the information provided to

the adviser, the taxpayers' views concerning the adviser's competence, and the taxpayers' reliance on the adviser's advice. *See, e.g.*, *Neonatology Assocs.*, 115 T.C. at 98–99. All of these are matters for trial. *See, e.g.*, *Belair Woods*, T.C. Memo. 2018-159, at *24 (noting that reliance-on-professional defense is inherently fact-intensive and outlining questions for trial); *Chrem*, T.C. Memo. 2018-164, at *24–25 (same).

The Commissioner offers two principal arguments in opposition; neither carries the day. First, the Commissioner contends that "DEFRA does not contain a reasonable cause defense" and that, because the alleged defects in the Forms 8283 "are all elements required by Congress in DEFRA," reasonable cause gives the Trusts and the Greens no help. Resp't's Mem. in Supp. of Obj. to Mot. for Partial Summ. J. 34–35 (Doc. 62). As the analysis above shows, the Commissioner's view of the law on this point does not accord with either the Code or our precedent.

Second, according to the Commissioner, the evidence produced by the Trusts and the Greens does not support finding reasonable cause as a matter of law because (he claims) (a) Hobby Lobby did not rely on the advice of a professional and (b) Hobby Lobby did not provide necessary and accurate information to the tax professional. How the Commissioner can claim to know these facts at this stage of the proceedings is unclear. What is clear is that the Trusts and the Greens vigorously challenge the Commissioner's assertions. And they have submitted a Declaration from a Hobby Lobby executive to back their position up. *See* Background Part II.C above. Read in the light most favorable to them as nonmovants, *see Sundstrand Corp.*, 98 T.C. at 520; *see also Anderson*, 477 U.S. at 255, the Declaration plainly raises genuine issues of material fact,[13] *see also* Rule 121(e) (providing that a party may resist summary judgment by pointing out evidence that the

---

[13] For example, what Hobby Lobby told its Grant Thornton advisers; what those advisers did in response to Hobby Lobby's instructions; what materials those advisers reviewed; what views, if any, the Grant Thornton advisers held about the relevant statutory and regulatory provisions, the Forms 8283 in effect at the relevant times, and the instructions accompanying those forms; and what views the Grant Thornton advisers had about the sufficiency of the Forms 8283 that Hobby Lobby had prepared—especially as related to the basis of the Contributed Artifacts, the acquisition dates of the Contributed Artifacts, and the signature issues—are all questions whose answers would inform the decision whether a reasonable cause defense is available here.

party plans to offer through testimony at trial, which may not be available for consideration at the summary judgment stage).

In short, the possible availability of the reasonable cause defense precludes partial summary judgment in favor of the Commissioner on the substantiation issue. And, because trial will be required on this issue (as well as the open valuation issues that the Commissioner's own Motions highlight), we decline to decide summarily the remaining substantiation issues, which (depending on the outcome of trial) might not need to be decided at all. *See, e.g.*, *Chrem*, T.C. Memo. 2018-164, at *25 ("Barring settlement, these cases will need to go to trial on the assignment of income issue and on [the taxpayers'] entitlement to the 'reasonable cause' defense. Under these circumstances we deem it prudent, for two reasons, to deny in their entirety both pending motions for partial summary judgment. First, if [the taxpayers] prevail on the 'reasonable cause' defense, it will be unnecessary for us to decide whether they substantially complied with the appraisal reporting requirements. Second, there could be some factual overlap between the two sets of issues.").

### B. *Cross-Motions with Respect to the Trusts*

As to the Motions related to the Trusts and the interplay among sections 641, 642, 681, 512(b)(11), and 170, after a careful review of the Motion papers, neither side has convinced us that it is clearly entitled to the rulings that it seeks. We therefore believe it prudent to defer resolving those issues until a full record for these cases is developed at trial and the matters concerning the substantiation issues are also resolved. *See Kroh v. Commissioner*, 98 T.C. 383, 390 (1992) (reviewed) ("Since the effect of granting a motion for summary judgment is to decide an issue against a party without allowing [it] an opportunity for trial, such action is a 'drastic remedy' to be used cautiously and sparingly after a consideration of the case reveals that the requirements for summary judgment have clearly been met." (quoting *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982))).

### *Conclusion*

For the reasons set out above, the Cross-Motions for Partial Summary Judgment will be denied.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

URDA, *C.J.*, and KERRIGAN, BUCH, PUGH, ASHFORD, COPELAND, JONES, GREAVES, WEILER, LANDY, ARBEIT, and FUNG, *JJ.*, agree with this opinion of the Court.

NEGA, MARSHALL, WAY, GUIDER, and JENKINS, *JJ.*, dissent.

MARSHALL, *J.*, with whom GUIDER and JENKINS, *JJ.*, join, dissenting: Rule 121(a) provides that the "Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court "shall"—not may.

The parties chose to postpone a scheduled trial session in favor of waiting for answers to their complicated questions of law. They filed Cross-Motions for Partial Summary Judgment pertaining to Hobby Lobby's compliance with the section 170(f)(11) and Treasury Regulation § 1.170A-13(c) substantiation requirements, ESBT petitioners' entitlement to deductions under sections 642(c) and 681(a), and the determined penalties. The six Motions, along with attached memoranda, replies, and other related filings, exceeded 1,000 pages. The parties also filed four Stipulations of Facts exceeding 10,000 pages.

On the basis of these extensive filings, the Court can decide multiple issues of law now. Doing so would shorten trial and offer the parties insights with which they could better explore settlement. Instead, the opinion of the Court provides no answers to the parties' questions of law and, after reviewing the thousands of pages filed, the Court disposes of only one substantive issue (i.e., penalty approval under section 6751(b)) in a separate, nonprecedential opinion, *Green 1993 Dynasty Trust v. Commissioner*, T.C. Memo. 2025-100, filed this date. As support for its decision to defer resolution of the substantive issues, the opinion of the Court concludes that "granting a motion for summary judgment is to decide an issue against a party without allowing [it] an opportunity for trial, [and] such action is a 'drastic remedy' to be used cautiously and sparingly." *See* op. Ct. p. 17 (quoting *Kroh v. Commissioner*, 98 T.C. 383, 390 (1992)). When both parties contend that they are entitled to partial summary judgment because there is no dispute as to any material fact, I understand that to mean they are identifying questions of law—and I think it is a "drastic remedy," to the detriment of the parties, that the opinion of the Court declines to answer those questions.

JENKINS, *J.*, with whom NEGA, WAY, and GUIDER, *JJ.*, join, and with whom MARSHALL, *J.*, joins as to Parts I and III, dissenting: The opinion of the Court concludes that summary judgment is not warranted because the existence of a triable issue with respect to the possible availability of a reasonable cause defense renders it imprudent to address the other issues presented by the parties in the Cross-Motions for Partial Summary Judgment considered (Motions). Although I would not grant any of the Motions in full, I respectfully disagree with the opinion of the Court to defer resolution of the purely legal issues presented and would grant some of the Motions in part as they relate to those issues.

I.      *Purpose of Summary Judgment*

As the opinion of the Court notes, *see* op. Ct. p. 10, the purpose of summary judgment is to expedite litigation and avoid costly and unnecessary trials, *see FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). In line with this purpose, "[p]artial adjudications . . . can be valuable devices for defining, narrowing, and focusing the issues to be litigated, thus conserving judicial resources." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions* (Fed. Jud. Ctr. 1991), *reprinted in* 139 F.R.D. 441, 496 (1992). Partial summary adjudication is appropriate if some but not all issues in the case may be decided as a matter of law, even though not all the issues in the case are disposed of. *See* Rule 121(a)(1); *Turner Broad. Sys., Inc. & Subs. v. Commissioner*, 111 T.C. 315, 323–24 (1998). Accordingly, partial summary judgment is appropriate to narrow the scope of issues for trial and to resolve issues that may make a case more susceptible to settlement, potentially avoiding trial altogether and thus conserving economic and judicial resources.

Nevertheless, the opinion of the Court holds that because a finding of reasonable cause would negate the need to address some of the issues raised in the parties' Motions, the Court should reserve judgment on all of the issues, even those that are preconditions to the reasonable cause inquiry and those that are separate, purely legal issues on which reasonable cause has no bearing. This approach is particularly significant given that it leads the Court to sidestep all of the issues relating to the three electing small business trusts—the David and Barbara Green 1993 Dynasty Trust, the Green Stewardship Trust, and the Green Family Delta Trust (together, Trusts)—specifically, even though the Trusts collectively claimed more than 95% of the deductions at issue in these cases, giving those issues outsized importance.

II.    *Motions Concerning Substantiation Issues*

Section 170(f)(11)(A)(ii)(II) excuses failure to comply with section 170(f)(11)(B), (C), and (D) if it is shown that the failure to meet the requisite substantiation requirements is due to reasonable cause and not to willful neglect. Because the section 170(f)(11) reasonable cause defense resembles the defense appearing in numerous other Code sections, the Court has construed the section 170(f)(11) defense in the same way the defense is construed in those other Code sections. *See Belair Woods, LLC v. Commissioner*, T.C. Memo. 2018-159, at \*22–23 (first citing *Alli v. Commissioner*, T.C. Memo. 2014-15, at \*60; and then citing *Crimi v. Commissioner*, T.C. Memo. 2013-51, at \*98–99).

Notably, the opinion of the Court relies on *Belair Woods*, *Alli*, and *Crimi* to explain how the Court construes the section 170(f)(11) reasonable cause defense, *see* op. Ct. pp. 13–14, but ignores those cases in considering the interaction of the defense with the determination of strict or substantial compliance with the substantiation requirements. In all three cases, the Court first addressed the substantiation requirements by analyzing, even if not determining, whether the taxpayer strictly or substantially complied with those requirements, before turning to the reasonable cause defense. *See Belair Woods, LLC*, T.C. Memo. 2018-159, at \*11–24 (analyzing strict and substantial compliance before holding "that Belair did not comply, either strictly or substantially, with the regulatory reporting requirements" and then turning to the reasonable cause defense); *Alli*, T.C. Memo. 2014-15, at \*51–63 (considering substantial compliance before holding that the taxpayers "did not substantially comply with the qualified appraisal and reporting regulations" and then turning to the reasonable cause defense); *cf. Crimi*, T.C. Memo. 2013-51, at \*84–102 (declining to make a determination with respect to substantial compliance because it could be established that the taxpayer's noncompliance would be "excused on the ground of reasonable cause," but not before noting that "[w]e are doubtful the . . . appraisal was in substantial compliance; nonetheless, we express no opinion today as to whether the cited defects . . . would individually or cumulatively fail to substantially comply with the qualified appraisal regulation").

The opinion of the Court cites *Chrem v. Commissioner*, T.C. Memo. 2018-164, as consistent with the decision to not address the remaining issues raised in the Motions concerning substantiation issues, given the potential impact of a reasonable cause finding. It is true that *Chrem* similarly declined to weigh in on the issue of

substantial compliance with the section 170(f)(11) substantiation requirements given the potential mooting effect of a possible reasonable cause finding. *Chrem*, T.C. Memo. 2018-164, at *25. However, *Chrem* is inapposite. As indicated in the opinion of the Court, *see* op. Ct. pp. 16–17, the Court's decision in *Chrem* to deny the motions for partial summary judgment was based not only on the potential effect of a reasonable cause finding but also the fact that there could be factual overlap between the reasonable cause issue and the remaining issue on which the parties sought partial summary judgment, the applicability of the assignment of income doctrine. *Chrem*, T.C. Memo. 2018-164, at *25.[1]

By contrast, there is no potential factual overlap between the reasonable cause issue and the substantial compliance issue in these cases.[2] The questions raised by the parties about the applicability of the substantiation rules and whether they were strictly or substantially complied with are legal issues that may be answered by the Court without trial.[3] And, given that the answers to those questions could affect the parties' settlement considerations and therefore the necessity of trial, they should be answered before trial.

The absence of the second justification in *Chrem* for denying the motions for partial summary judgment is particularly significant given that the first justification supports ruling on the legal issues presented by the parties even more strongly than it supports focusing on reasonable cause. The application of the reasonable cause defense to section 170(f)(11)(A)(i) is relevant only if there has been a failure to comply with applicable substantiation requirements.

---

[1] In *Chrem*, T.C. Memo. 2018-164, at *25–26, the Court explained that the taxpayers might contend that no appraisal was required because the value of the contributed stock was fixed. Because the Court would need to determine, after trial, whether the sale of the stock by the contributee following the stock contribution was sufficiently preordained for the assignment of income doctrine to apply to the contribution, it would also need to determine whether, consequently, the sale was sufficiently preordained to affect the treatment for purposes of section 170(f)(11) of the contribution.

[2] In these cases, there is no dispute that the contributed property was a type of property with respect to which the section 170(f)(11) substantiation requirements apply.

[3] The issue of whether Mr. Thompson and Ms. Sandberg were appraisers whose signatures on the appraisals were required is an exception. However, that factual issue has no interaction with the factual issues underlying the reasonable cause defense determination; neither does it affect the remainder of the analysis concerning strict or substantial compliance, which is based on the face of the Forms 8283, Noncash Charitable Contributions, prepared by Hobby Lobby Stores, Inc. (Hobby Lobby).

§ 170(f)(11)(A)(ii)(II). Accordingly, the Court has previously granted partial summary judgment regarding the substantiation issue while reserving judgment on the reasonable cause defense. *See, e.g.*, *Schweizer v. Commissioner*, T.C. Memo. 2022-102, at \*5–6; *Belair Woods*, T.C. Memo. 2018-159, at \*21–24. If, instead of putting the cart before the horse, the Court in this case were to similarly consider the statutory predicates for applicability of the reasonable cause defense, and if it were to find either that the substantiation rules do not apply with respect to petitioners or that petitioners strictly or substantially complied with the substantiation requirements, it would inherently be unnecessary for the Court to decide whether there was reasonable cause for noncompliance. Accordingly, the issues for trial would be narrowed, further expediting litigation.

The opinion of the Court explains various matters that the Court must evaluate if taxpayers claim to have relied on a professional, including "the taxpayers' reliance on the adviser's advice," *see* op. Ct. p. 16, given that the advice is the crux of the defense. But of course, petitioners have made only a skeletal argument for reasonable cause, not even mentioning any facts necessary to determine whether there was advice, nor invoking Rule 121(e) to indicate that trial testimony will flesh them out.[4] Given the paucity of petitioners' reasonable cause

---

[4] Notably, petitioners claim reliance on Grant Thornton, LLP but neither provide an affidavit from Grant Thornton addressing its advice nor suggest that someone from Grant Thornton will testify to such advice, notwithstanding that this Court's caselaw finding reasonable cause based on reliance on an adviser generally involves adviser input. *Compare, e.g.*, *Patacsil v. Commissioner*, T.C. Memo. 2023-8, at \*18–19, *and Kelly v. Commissioner*, T.C. Memo. 2021-76, at \*49–51, *aff'd*, 139 F.4th 854 (9th Cir. 2025), *with Woodsum v. Commissioner*, 136 T.C. 585, 593 (2011).

The opinion of the Court outlines numerous topics on which Grant Thornton's input, if it were available, could be useful, *see* op. Ct. note 13, illustrating the potential scope of trial testimony that could potentially be rendered unnecessary by a ruling on the legal issues. However, I disagree with the opinion of the Court that the views of Grant Thornton, as opposed to the advice it provided, are relevant to the issue of reliance, and I believe that the opinion of the Court inappropriately muddles the substantial compliance analysis with the reasonable cause analysis in suggesting that they are.

For example, the opinion of the Court specifically mentions the instructions to the Form 8283, which petitioners have cited in support of their argument for strict or substantial compliance, even though those instructions do not modify the relevant statutory or regulatory provisions. *Cf. Carpenter v. United States*, 495 F.2d 175, 184 (5th Cir. 1974); *Adler v. Commissioner*, 330 F.2d 91, 93 (9th Cir. 1964), *aff'g* T.C. Memo. 1963-196; *Casa De La Jolla Park, Inc. v. Commissioner*, 94 T.C. 384, 396 (1990); *Green*

argument, there is no reason to place resolution of the factual reasonable cause issue ahead of resolution of the statutorily preliminary and similarly potentially dispositive but purely legal issues concerning applicability of and compliance (strict or substantial) with the substantiation requirements.

## III.   *Motions Concerning Trust-Specific Issues*

The opinion of the Court cursorily concludes that it is prudent to defer resolving the issues presented in the Motions concerning issues specific to the Trusts until after the full record is developed at trial. *See* op. Ct. p. 17. In support thereof, it cites *Kroh v. Commissioner*, 98 T.C. 383, 390 (1982), for the proposition that it is a "drastic remedy" to deny a party an opportunity for trial. However, the parties in these cases all argue that the determination of the amounts of the deductions for which the Trusts are eligible is an issue of law. Given that they therefore do not seem to be seeking a trial (except, under petitioners' view, with respect to valuation), it is difficult to see how ruling on the legal issues presented by the parties as they have requested would be a "drastic remedy."

The Court's Rules provide that summary judgment "shall" be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law and that the Court should state the reasons for denying a motion. Rule 121(a)(2) and (3). Accordingly, the opinion of the Court reflects a determination that a condition for summary judgment is not satisfied but does not explain why the Court disagrees with all of the parties in that regard.[5] If the Court does believe that there is a genuine dispute of

v. *Commissioner*, 59 T.C. 456, 458 (1972); *Caterpillar Tractor Co. v. United States*, 589 F.2d 1040, 1043 (Ct. Cl. 1978). Nevertheless, if Hobby Lobby actually relied on those instructions in preparing its Form 8283, that could potentially bear on the issue of whether there was reasonable cause independent of any purported reliance on Grant Thornton. However, Grant Thornton's advice, rather than merely its views, is what is relevant to the reasonable cause arguments that petitioners have made thus far.

[5] A nonexhaustive list of reasons why the Court might not be convinced by either party is if the Court believes (1) petitioners are correct about both of their legal arguments, but the Trusts' deduction amounts are limited to bases in the contributed artifacts under Treasury Regulation § 1.641(c)-1, in which case the valuation issues to be addressed at trial will be irrelevant to the Trusts, (2) petitioners are correct about the Trusts' being entitled to partial deductions but not about *Green v. United States*, 880 F.3d 519 (10th Cir. 2018), with the same result, and/or (3) the Trusts' entitlement to deductions is subject to the substantiation requirements, such that the reasonable cause issue to be addressed at trial will be relevant to the Trusts.

material fact, it would behoove the Court to make the parties aware of that in order to permit informed decision making with respect to and preparation for trial. And if the Court has determined that all of the parties are incorrect as a matter of law, it would likewise be appropriate to state as much for clarity.

IV.   *Conclusion*

For the reasons discussed herein, I respectfully disagree with the refusal of the opinion of the Court to address any of the issues raised by the parties in the Motions other than reasonable cause. I agree with the opinion of the Court that there is a genuine dispute of material fact with respect to reasonable cause, even if just barely, and therefore agree that none of the Motions should be granted in full. However, because I would not deny all of the Motions in full, I dissent.